[Civ. No. 14673.   Second Dist., Div. One.   June 13, 1945.]

ANDREW F. SHIDELER et al., Respondents, v. BOLDEN B. ROBERTS et al., Appellants.

Irvin C. Evans and Daniel N. Dougherty for Appellants.

Arthur C. Arnold for Respondents.

THE COURT.—This is an appeal by defendants from a judgment rendered by the court sitting without a jury, whereby Bolden B. Roberts and Ruby J. Roberts, his wife,

are enjoined and restrained "from permitting Lot 86, Crestmore Tract, in the City and County of Los Angeles, State of California, to be occupied by any person or persons not of the white or Caucasian race, in violation of the terms of the agreement . . . in plaintiffs' complaint," and by which judgment the above-named defendants "are enjoined and restrained from occupying the said premises in violation of the terms of said agreement . . . until the expiration of said agreement, to-wit: the first day of January, Nineteen Hundred and Fifty."

Plaintiffs own and reside upon real property in Crestmore Tract, a real estate subdivision in the city of Los Angeles. Embraced within Crestmore Tract are a total of 115 lots, including all of the lots fronting on both sides of Thirtieth and Thirty-first Streets and the north side of Jefferson Boulevard, between Arlington Avenue on the west and a line parallel with and 250 feet easterly of Cimarron Street on the east. Eighty-five of said lots are in that part of the tract lying between Arlington Avenue and Cimarron Street, while the remaining 30 lots are east of Cimarron Street. In 1925, some 112 persons, owners of property in Crestmore Tract, executed and caused to be recorded a written instrument whereby each signing owner, as a covenant running with the land, agreed to restrict the use and occupancy of the property owned by him, up to the first day of January, 1950, to persons of the Caucasan race. The foregoing agreement impressed the restriction on 76 lots of the 85 lots west of Cimarron Street, including Lot 86 at 2200 West Thirtieth Street, which is the subject of this litigation. In June of 1936, defendants, who are non-Caucasians, acquired the title to said Lot 86 and, until on or about July 9, 1940, maintained said lot for use and occupancy by persons of the Caucasian race, but on or about the last named date defendants themselves entered into occupancy of said property contrary to the aforesaid restriction agreement, and at the time of the commencement of this action were occupying the same. At the time defendants took title to Lot 86 and at all times since, they had actual and constructive notice and knowledge of the foregoing restrictive covenants against their use and occupancy of the same.

Plaintiffs are the owners of and reside upon certain of the

restricted lots in that portion of Crestmore Tract west of Cimarron Street.

By their answer defendants denied practically all of the material allegations of the complaint and set up the following five affirmative defenses: (a) changed conditions; (b) waiver; (c) estoppel; (d) laches; and (e) the statute of limitations.

The complaint alleged and the court found the facts as to ownership to be as alleged by plaintiffs; that the aforesaid restriction agreement was duly executed and recorded; and also that as to Lot 86 which is here involved that the agreement was executed by the then owners, from whom by mesne conveyance defendants herein acquired title prior to the commencement of this action.

The court further found that, since the signing, execution and recordation of said agreement, ''and of the date hereof, the said real property in said agreement described has been maintained for the exclusive residential use of persons of the Caucasian race, except as to that portion of said tract east of Cimarron Street''; that ''from said 5th day of June 1936 to on or about the 9th day of July 1940, defendants and each of them maintained said Lot 86 for the use and occupation of persons of the Caucasian race''; but that on the 9th day of July, 1940, defendants entered upon said premises and continued to use and occupy the same up to the time of the commencement of this action contrary to and in violation of the provisions of said agreement; that at the time defendants took title to said Lot 86, and at all times thereafter, the defendants and each of them ''had actual and constructive notice and knowledge of the provisions against use and occupancy of said Lot 86 by persons not of the Caucasian race, as provided in said agreement.'' The court further found ''that it is true that the said occupancy of said premises by said colored defendants, and the continuance of their said occupancy, result and will continue to result in great and irreparable injury to plaintiffs, in that the said occupation of said Lot No. 86 by said colored defendants makes plaintiffs' property less desirable to them for residential purposes and likewise greatly injures and depreciates the sale value of the same''; that ''the use and occupation of said Lot No. 86 by said colored non-Caucasian defendants was intended by said defendants and each of them, to violate and breach the restrictions

set forth in said agreement; was intended to affect the racial character of the residents of that portion of said Crestmore Tract west of said Cimarron Street, and was intended to make the plaintiffs' property less desirable for the use and occupation for residential purposes by plaintiffs and persons of the Caucasian race''; that said ''colored defendants and each of them, without regard to the rights of plaintiffs, intended by said use and occupation of said premises not only to secure the violation and breach of the restrictions contained in said agreement but intended also thereby, to change the general racial character of said tract and make plaintiffs' property less desirable to plaintiffs for their use and occupancy; and intended that said use and occupancy of said Lot No. 86 should be an inducement and encouragement to other non-Caucasian persons to secure the use and occupancy of other residential property therein, and thus seek to nullify the restrictions set forth in said agreement.''

With reference to the affirmative defenses set up by defendants, the court found that ''the area immediately east of said tract extending about three hundred (300) feet easterly of said Cimarron Street is now occupied to a great extent by persons other than of the Caucasian race, and that there is one public school situate six blocks distant from said Lot 108, having a majority attendance of non-Caucasian pupils''; and ''that it is not true that it is against the best interests of public policy or of any public policy or at all, that the plaintiffs are now at this time not entitled to enforce said restrictions or to prevent the defendants from using and/or occupying said Lot 86 of said Crestmore Tract for residential purposes for themselves.'' The court further found ''that it is not true that almost continuously since the year 1925 to the present time, and particularly within the past ten (10) years, there has been in a very marked degree, or in any marked degree or at all, a voluminous change or any change at all in the racial residential population in and upon that portion of said tract west of Cimarron Street; that it is not true that the plaintiffs, or some of the plaintiffs, or some of the persons whom the plaintiffs for whom and on behalf of whom this action is brought, expressly waived their rights or waived any rights or at all, to the enforcement of the restrictions mentioned in

plaintiffs' complaint or knowingly or at all permitted persons and families not of the Caucasian race to be in possession of and occupy parcels of land in said tract for many years for residential purposes, save and except upon two lots thereof upon which restrictions do not apply; that it is not true that the plaintiffs or other persons on behalf of whom this action is brought have by tacit consent or by any tacit consent or acquiescence or by any consent or acquiescence or at all, therein waived such and any and all rights or any rights whatsoever which the plaintiffs claim for themselves and said other persons to object to the use of said Lot 86 by said defendants for residential purposes''; and ''that it is not true that the changes in uses to which any land adjacent to that portion of said Crestmore Tract west of Cimarron Street have been put have made any said portion of said tract embraced within said agreement, any the less desirable for use and occupation by Caucasian persons; that it is not true that there has been any change in the character of the use and occupation, by Caucasian persons, of any of the lots in said portion of said tract west of Cimarron Street, embraced in said agreement, since the recordation thereof.'' The court further found against defendants on the contention of the latter that since prior to the first day of July, 1940, plaintiffs and other persons in whose behalf plaintiffs alleged the action was brought have permitted and consented that defendants might use and occupy said Lot 86 as their residence, and further that it was untrue that defendants occupied said premises for a period of three years immediately prior to the commencement of this action or that defendants expended a sum of money considerably over Two Thousand Dollars ($2,000.00) in improving said premises since the occupancy thereof by them under the belief that their residing upon said premises was not in violation of the aforesaid conditions, covenants and restrictions, and on the contrary found that ''if any improvements or repairing were made to said premises by said defendants, said repairing and said improvements were made by defendants with actual and constructive notice and knowledge by the defendants of the restrictions against use and occupancy of said premises by persons of other than the Caucasian race, as set forth in plaintiffs' complaint.'' The court also found against defendants' contention that the instant action was

"barred by the provisions of subdivision 2, section 338, of the Code of Civil Procedure of the State of California," and that said action was not "barred by any other section in said code contained, or at all."

The case of *Wayt* v. *Patee*, 205 Cal. 46, 49 [269 P. 660], is authority for the statement that the agreement herein, being one whereby the parties thereto bound themselves not to permit occupancy of their respective lots by persons not of the Caucasian race and to incorporate such a restriction in all deeds of transfer of their respective lots, was a valid covenant binding upon the parties thereto, and equally binding upon all others who, like the defendants herein, take with notice thereof.

As their first ground of appeal, appellants assert that the trial court committed prejudicial error in denying them the right to show change in conditions in the neighborhood surrounding the restricted area or tract, and in limiting testimony to only that part of the restricted tract lying west of Cimarron Street. This claim is without merit, because the record shows that the court not only received evidence as to that part of Crestmore Tract east of Cimarron Street, but actually found as a fact "that it is true that the area immediately east of said tract extending about three hundred (300) feet easterly of said Cimarron Street is now occupied to a great extent by persons other than of the Caucasian race, and that there is one public school situate six blocks distant from said Lot 108, having a majority attendance of non-Caucasian pupils."

Appellants next assert that finding XVI, in which the court found "that there had been no change in the character" is worthless and of no effect in view of the court's failure to receive evidence on that issue. However, the challenged finding is to the effect that the adjacent territory east of Cimarron Street had changed but that, despite and notwithstanding the changed condition east of Cimarron Street, that portion of said Crestmore Tract west of said street still remains "desirable for use and occupation by Caucasian persons" and that since the recordation of the agreement here in question there has not been "any change in the character of the use and occupation, by Caucasian persons, of any of the lots in

said portion of said tract west of Cimarron Street.'' The law is now well settled that ''where all, or perhaps substantially all, of the contiguous lots of a tract of substantial extent are subject to race restrictions, the courts should not fail to enforce the covenants as to the restricted area merely because surrounding property eventually is put to the use and occupation prohibited to the restricted area.'' (*Fairchild* v. *Raines*, 24 Cal.2d 818, 827 [151 P.2d 260].) In the case just cited, at page 827, it is further stated: ''Obviously the precise purpose of the covenants is to avert changes in the restricted territory, not in the surrounding neighborhood, and they can have no legal efficacy beyond the area of the tract to which they are applicable. The mere fact that a change in the character of the use of neighboring property may make free use of restricted property more profitable does not warrant failure to enforce restriction. . . .'' The vital question is whether ''the original purpose of the covenant can still be realized.'' The evidence herein clearly justified the court in finding that Cimarron Street, as it passes through Crestmore Tract, forms, as it were, a dividing line between non-Caucasian occupation on the east of said street and Caucasian occupation on the west. There was also substantial evidence that, at the time this action was commenced, all of the restricted lots west of Cimarron Street, totaling some 89 per cent thereof, except Lot 86 here in issue, were occupied by Caucasians. Appellants point to three lots west of Cimarron Street which were unrestricted and which were occupied by non-Caucasians, but the court found on substantial evidence that this fact does not in the instant case militate against realization of the original purpose of the restrictive covenants. ▪ As was said in *Fairchild* v. *Raines, supra,* at page 828: ''Even if restrictions are not enforcible as to every lot in an area originally covered by an agreement they may be upheld as to a part of that area if such part is of sufficient extent and so located that the original purpose of the restrictions can be accomplished.'' In the same case, the court at page 825, stated that, ''subject to certain broad principles, each case of this character must be determined upon the facts peculiar to it.'' Were this not so, all restrictive covenants could be rendered nugatory through a change in the character of the population surrounding the restricted area or through a few isolated changes within the

area. And in that regard, this court said in *Stone* v. *Jones,* 66 Cal.App.2d 264, 269 [152 P.2d 19], "this is so because of the very nature of the issues involved and because of the variety of situations incident to such agreements, for in such circumstances there can be no formula by which the equities in one case can be measured by the equities in another." Actions of the character with which we are here concerned arise out of a contractual relation. ■ And where valid the obligations thereof will be enforced unless, as was held in *Stone* v. *Jones, supra,* at page 269, "for purely equitable reasons the enforcement thereof would be to no purpose so far as the rights of the parties to the action are concerned."

■ The findings based upon competent evidence refute appellants' claim that change of the character of the surrounding neighborhood, not resulting from a breach of the covenants, had created a condition whereby enforcement of the restrictive covenants by a court of equity would not benefit the plaintiffs and would serve only to injure and harass the defendants.

■ Appellants next contend that the court erred in upholding the validity of a race restriction agreement where respondents in their complaint admit such agreement was unenforcible in a large section of the restricted area or tract. The complaint alleged that, "since the signing, execution and recordation of said agreement, as aforesaid, and to the date hereof, the said real property in said agreement described has been maintained for the exclusive residential use of persons of the Caucasian race, *except as to that portion of said tract east of Cimarron Street."* It is upon the italicized portion of the complaint just quoted that appellants base their argument of waiver and abandonment. Conceding that the restrictions east of Cimarron Street are unenforcible under the findings of the court that such section of the tract "extending about three hundred feet easterly of said Cimarron Street is now occupied to a great extent by persons other than of the Caucasian race," nevertheless, as we have heretofore pointed out, that is not determinative of whether the enforcibility of the restrictions west of Cimarron Street ceased. A change in character of the use of neighboring property does not warrant the court's failing to enforce the covenants as to the restricted area where the original purpose of the covenants, to avert changes in the restricted territory, can yet be realized. The

trial court's finding that since 1925 there has been no "change at all in the racial residential population in and upon that portion of said tract west of Cimarron Street," and that plaintiffs at no time waived their right to seek enforcement of the restrictive covenants upon the property which is the subject of this action is supported by the record.

Appellants insist that had the court permitted them to show by testimony the conditions of the surrounding neighborhood they "could have shown the housing facilities available in the district occupied by the colored population and their need for additional housing which would justify an expansion of the district by an absorption of the restricted area." What we have heretofore said with reference to the rights of the parties to an action to have their contractual agreements enforced when they are lawful and not against public policy answers this contention, as does the language of this court in *Stone* v. *Jones, supra,* at page 269, wherein we said: "Collateral possibilities or indirect consequences are beside the issue. Changes, or the likelihood thereof, incident to the growth of a community, may create or forecast perplexing social problems, but such problems, from the very nature of things, cannot be solved by the courts in the process of litigation of a purely private nature. Any attempt to do so would be an unwarranted interference with the functions of other branches of the government already equipped with power and means for the comprehensive consideration of such problems."

Appellants' contention that the court erred in striking out testimony concerning changed conditions in the area west of Cimarron Street after the date of filing the complaint and in refusing defendants permission to file a supplemental answer cannot be sustained. From the testimony which was stricken out, it appears that at the time of trial there were a total of six lots in the area west of Cimarron Street occupied by non-Caucasians. However, three of these lots were concededly occupied by non-Caucasians prior to the filing of the complaint and were therefore not affected by the court's ruling. As to the testimony concerning the remaining three lots west of Cimarron Street it is sufficient to say that there can be no valid claim of "change of character" in the area when such change is a result of the breach of restrictive covenants for which relief is seasonably sought (*Fairchild* v.

*Raines, supra; Hurd* v. *Albert,* 214 Cal. 15 [3 P.2d 545]).

■ Finally, appellants predicate prejudicial error upon the claim that ''the trial court erred in failing to consider the early expiration date of the race restrictions.'' That the court did give consideration to and have in mind the expiration date of the restrictive covenants is evidenced by the fact that in making its conclusions of law and in ordering the issuance of an injunction, the court directed that such injunction ''continue until the expiration of said agreement, to-wit: the first day of January Nineteen Hundred and Fifty.'' Conceding that the expiration date of the restrictive covenants is one of the material facts to be considered (*Fairchild* v. *Raines, supra,* p. 826), nevertheless it is not conclusive and determinative of the issue as to whether or not the covenants will be enforced. The court should, and in the instant case as heretofore indicated did, give consideration to the expiration date.

■ As pointed out in *Fairchild* v. *Raines, supra,* at page 826, ''It is the general rule that the granting or withholding of equitable relief involves the exercise of judicial discretion.''

■ In the case with which we are here concerned, nothing has been presented from which it can be said that the trial court was guilty of an abuse of the discretion vested in it. Competent and substantial evidence adduced at the trial support the findings and the latter support the judgment. No prejudicial errors appear in the record and the judgment must therefore stand.

For the foregoing reasons, the judgment is affirmed.

A petition for a rehearing was denied July 3, 1945.