[L. A. No. 11209. In Bank.—September 28, 1931.]

JAMES D. HURD et al., Appellants, v. GEORGE C. ALBERT et al., Respondents.

Victor E. Shaw, Joseph L. Lewinson and F. Walton Brown for Appellants.

Loeb, Walker & Loeb and Louis Greenbaum for Respondents.

THE COURT.—This action was instituted by plaintiffs as property owners in Shatto Place tract, in the city of Los Angeles, to enjoin defendants from constructing and maintaining a gasoline, oil and service station on lots 13, 14 and 15, block 2, in said tract, in violation of certain restrictive residential covenants found in each deed by which lots in the tract were conveyed. Shatto Place tract, in which plaintiffs' and defendants' properties are located, was subdivided in the year 1905 for residential purposes, restrictive covenants, unlimited as to time, being inserted in all deeds by which parts of the tract were conveyed. So far as necessary to a decision of the questions involved on this appeal, these covenants provide that the property can be used only for single family residences, of at least two stories in height, to cost not less than $7,500, and to be erected within certain designated set-back lines. The deeds likewise provide that if there be any violation of the restrictive covenants by the grantee, or his successors in interest, such grantee's interest shall be forfeited to the grantor, her heirs, successors and assigns. It is specifically provided that the restrictive covenants are covenants running with the land for the benefit of the grantor, and for the benefit of the other lots in the tract.

The tract is bounded on the south by Wilshire Boulevard, on the west by Vermont Avenue, on the north by Fourth Street and on the east by the westerly line of the lots abutting the west side of Westmoreland Avenue, except as to the northerly portion of said tract, which is bounded on

the east by Westmoreland Avenue. The area thus inclosed comprises a rectangular area about three blocks long and less than two blocks wide. Sixty rather large city lots are included in the tract.

The three lots of defendants are located on the southeast corner of Sixth Street and Vermont Avenue, and face what is now and for some time past has been unrestricted territory on the west side of Vermont Avenue. These lots were acquired by defendants Albert in 1922. On May 1, 1923, these defendants granted to defendant Crawford, who was admittedly acting for others, a ninety-nine year lease on the premises. There is no dispute that all the defendants had notice and knowledge of the restrictions, and there can be no doubt that they acquired their respective interests with the intention, if possible, to break the restrictive covenants.

The complaint alleges the ownership by plaintiffs of certain lots in the tract; alleges in detail the restrictions; alleges that defendants are engaged in the construction of a gasoline, oil and service station on lots 13, 14 and 15, in violation of the restrictions, to the damage of plaintiffs. An injunction and money damages are prayed for. The answer admits the existence and validity of the restrictions, and admits that the erection and maintenance of a gasoline station on the property is in violation of the restrictions. The principal defense set up in the answer is that the character of the territory, both inside and outside the tract, and surrounding defendants' lots, has so changed that the property of defendants has become essentially business property. It is likewise contended that the erection and maintenance of the gasoline, oil and service station will not injure plaintiffs' property for residential purposes. Based on these two major premises, it is alleged that the covenants and restrictions have become ineffective, by virtue of these changed conditions, and that the enforcement of the same under the facts of this case, would be inequitable, unjust and oppressive. The trial court, after hearing all the evidence, and after making a personal inspection of the locality involved, denied injunctive or monetary relief to plaintiffs. From the judgment entered accordingly, plaintiffs prosecute this appeal.

The trial court, among other things, found that due to changes in the neighborhood, and three lots of defendants

"are no longer suitable or desirable for residential purposes; and that defendants' said lots have no market value for residential purposes, but are essentially business property; and that if defendants are restrained from using their said property for the only purpose for which it is now suitable and available, they will be irreparably damaged and deprived of any use whatsoever of said property; and that by reason of said changed conditions in the neighborhood occurring since the said restrictions were imposed, it would be inequitable to enforce them against the said uses to which defendants are devoting their said property". The court likewise found that the use of the three lots in question "for said purposes [maintaining a gasoline, oil and service station] will not damage the property in said tract owned by the plaintiffs or any of them, or depreciate or destroy the use of the same for residential purposes, or render the lots or homes of plaintiffs or any of them undesirable or unfit for residential use, or cause any damage to the plaintiffs or any of them".

■ Before discussing the findings of the lower court in reference to the changes that have occurred, both inside and outside the tract, since the area was subdivided in 1905, it is necessary to point out that a distinction must be made as to changes that occurred before 1923 and those that have occurred subsequent to that date. That date becomes important because the question of the effect of the changed conditions on part of the very property involved on this appeal was tried and determined adversely to defendants in that year. The property involved on this appeal was purchased by defendants during the pendency of and with knowledge of this former litigation. The former litigation resulted in two appeals. The first is to be found in *Strong* v. *Shatto*, 45 Cal. App. 29 [187 Pac. 159], and the second appeal is to be found in *Strong* v. *Hancock*, 201 Cal. 530 [258 Pac. 60]. The trial resulting in this second appeal took place in 1923. In that action, the trial court, on substantially conflicting evidence, found that it is not true that "'the change in uses to which the land surrounding and adjacent to Shatto Place has been put has been complete; nor is it true that any of said changes in uses of property have taken place within the said Shatto Place; nor is it true that any of said changes of use of property have made

the property within Shatto Place or any of the lots contained therein wholly unadapted or undesirable for residential purposes. And in this connection the court finds that the changes in use of property outside of but adjacent to and in the vicinity of Shatto Place herein found to have taken place are the same sort and character of changes of use which the court found to have taken place in and by its written findings of fact filed herein upon the first trial of this cause, and that the difference in the said change of use and in the conditions affecting the property in the vicinity of the said Shatto Place is one of degree but not of kind.' '' (*Strong* v. *Hancock, supra,* at p. 544.)

In other words, the trial court, in that action, found that as conditions existed in 1923, they were not of such a nature as to warrant releasing the property involved on this appeal from the effect of the covenants. On appeal in the former action, this court held that the finding last above quoted was based on substantially conflicting evidence and, therefore, could not be disturbed on appeal.

After this unsuccessful attempt to break the restrictions, defendants started construction of the gasoline, oil and service station, resulting in this action, which was tried in 1928, and the findings, of course, are based on the conditions as they existed at that time. The findings in reference to the changed conditions are quite detailed. There is no necessity for discussing the changes outside the tract that occurred between 1905 and 1923. Those changes are discussed at some length in the case of *Strong* v. *Hancock, supra,* to which reference is made for a complete description of the same. Before discussing the changes that have occurred outside the restricted area since 1923, some reference must be made to the findings, in the instant case, concerning changes inside the tract.

As stated earlier in this opinion, the restricted area is bounded on the south by Wilshire Boulevard and on the west by Vermont Avenue. Sixth Street runs in an easterly and westerly direction through the tract, running parallel to Wilshire Boulevard and being located one block north therefrom. The trial court found that these three streets "have become and are three of the most congested streets for vehicular traffic in the City of Los Angeles, and are used not only for pleasure, but for freight and business

purposes; along and in said Sixth Street there is located a double track street railway carrying east and west bound traffic, and along said Vermont Avenue is located a double track street railway carrying north and south bound traffic. Said lines of street railway cross each other at the intersection of Vermont Avenue and Sixth Street and street cars, traveling in all four directions, pass said intersection at frequent intervals throughout the day and until a late hour at night; at said intersection of Vermont Avenue and Sixth Street, at each of the four corners thereof, an automobile traffic signal equipped with semaphores and bells has been erected and said bells ring at intervals of twenty to twenty-five seconds throughout the day until about 10:30 o'clock at night; at said intersection newsboys call out their wares from early evening until after midnight. Wilshire Boulevard, running parallel with said Sixth Street and one block south thereof, is an extensively used boulevard for east and west bound vehicular traffic and throughout the day and until a late hour at night the intersection of said Wilshire Boulevard with Vermont Avenue is greatly congested with traffic; traffic signal semaphores and bells are installed at said intersection, said bells ringing at frequent intervals throughout the day and during certain hours at night.''

In addition to these changes, defendants had likewise pleaded their answer that certain other changes, such as the use of certain residences for business purposes, had occurred inside the tract. In' reference to each of these alleged changes, the trial court found that they constituted immaterial and unsubstantial violations of the covenants. According to the findings of the trial court, the only important changes that have occurred inside the tract since 1905 have to do with the increased vehicular traffic and congestion on Wilshire Boulevard, Vermont Avenue and Sixth Street. In the case of *Strong* v. *Hancock, supra,* this court specifically held that the operation of street railways inside the tract, and the increased use of the streets inside and bounding the tract for other vehicular traffic, did not, as they existed in 1923, constitute such a change in conditions as to release the property involved on this appeal from the effect of the restrictive covenants. In so holding, however, this court pointed out that in that case the trial court had found that such increased use had not de-

stroyed the restricted residential uses of the property here involved. In the case at bar, the trial court, considering the situation as it existed in 1928, held that such increased vehicular traffic and congestion, when considered with the changes that had occurred outside the tract, had rendered the defendants' property unsuitable for residential purposes. ▇ We think the increased vehicular traffic and congestion along the three streets mentioned were properly considered by the trial court, in connection with the other changes that had taken place, in determining whether defendants' property was suitable for residential purposes. We do not mean to hold that such increased traffic and congestion alone are sufficient to warrant releasing affected property from the restricted covenants, but we think that such changes can properly be considered by the trial court, together with other changes, in determining whether or not the covenants should be enforced.

▇ As to the changes that have occurred outside the restricted area, the trial court found that in 1905, when Shatto Place tract was first subdivided, the territory inside the tract, and the territory surrounding the tract, "was used primarily and exclusively for private residences"; that there "were no hotels, apartment houses, stores or business houses in the immediate vicinity"; that since "1905 the character of the uses to which the land surrounding and immediately adjacent to said Shatto Place Tract has been completely changed from that of a residential section to that of a business, apartment house and flat-building section". The court fully itemizes the various changes, showing that almost the entire surrounding territory is now being devoted to the above purposes, and pointing out that many of these changes have taken place since 1923. It would serve no useful purpose to enumerate in this opinion the changes that have occurred outside the tract since 1923. Sufficient it is to say that we are of the opinion that they are of such a nature and of such a degree as to warrant and sustain a judgment different from that rendered in 1923.

We are of the opinion, after reading the record, that the above findings are all supported by substantial evidence, and cannot be disturbed on appeal. Such findings are ample to sustain a judgment denying injunctive relief.

Whatever may be the weight of authority in other jurisdictions, the rule in this jurisdiction is well settled that the equity courts will not enforce restrictive covenants by injunction in a case where, by reason of a change in the character of the surrounding neighborhood, not resulting from a breach of the covenants, it would be oppressive and inequitable to give the restriction effect, as where the enforcement of the covenant would have no other result than to harass or injure the defendant, without benefiting the plaintiff. The leading case in this jurisdiction on the point is *Downs* v. *Kroeger,* 200 Cal. 743 [254 Pac. 1101], where the majority of this court held that changes outside the tract, coupled with substantial evidence that to enforce the covenant would cause irreparable injury to defendant, without materially benefiting the plaintiff, were sufficient to sustain a judgment denying injunctive relief. In that case this court, at page 747, stated:

"The authorities unquestionably support the conclusion of the trial court in holding that where there has been a change in the uses to which the property in the neighborhood is being put, so that such property is no longer residence property, it would be unjust, oppressive, and inequitable to give effect to the restrictions, if such change has resulted from causes other than their breach.

" 'It is evident that the purpose of the restrictions as a whole was to make the locality a suitable one for residences; and that, owing to the general growth of the city, and the present use of the whole neighborhood for business, this purpose can no longer be accomplished. If all the restrictions imposed in the deeds should be rigidly enforced, it would not restore to the locality its residential character, but would merely lessen the value of every lot for business purposes. It would be oppressive and inequitable to give effect to the restrictions, and, since the changed condition of the locality has resulted from other causes than their breach, to enforce them in this instance could have no other effect than to harass and injure the defendant, without effecting the purpose for which the restrictions were originally made. (Citing cases.)' " (*Jackson* v. *Stevenson,* 156 Mass. 496, 502 [32 Am. St. Rep. 476, 31 N. E. 691, 693].)

" 'It certainly is not the doctrine of courts in equity, to enforce, by its peculiar mandate, every contract, in all cases, even where specific execution is found to be its legal intention and effect. It gives or withholds such decree according to its discretion, in view of the circumstances of the case, and the plaintiff's prayer for relief is not answered, where, under those circumstances, the relief he seeks would be inequitable. (*Peters* v. *Delaplaine*, 49 N. Y. 362; *Margraf* v. *Muir*, 57 N. Y. 155; *Mathews* v. *Terwilliger*, 3 Barb. (N. Y.) 51; *Radcliffe* v. *Warrington*, 12 Ves. (Eng.) 331.) If for any reason, therefore, not referable to the defendant, an enforcement of the covenant would defeat either of the ends contemplated by the parties, a court of equity might well refuse to interfere or if in fact the condition of the property by which the premises are surrounded has been so altered "that the terms and restrictions" of the covenant are no longer applicable to the existing state of things. (1 Story's Eq. Jur., 10th ed., sec. 750.) And so, though the contract was fair and just when made, the interference of the court should be denied, if subsequent events have made performance by the defendant so onerous, that its enforcement would impose great hardship upon him, and cause little or no benefit to the plaintiff.' " (*Trustees of Columbia College* v. *Thacher*, 87 N. Y. 311, 317 [41 Am. Rep. 365, 367].)

" 'Under the circumstances now existing the covenant is no longer effective for the purpose in view by the parties when they made it, and the enforcement thereof cannot restore the neighborhood to its former condition by making it desirable for private residences. If the building restrictions were of substantial value to the dominant estate, a court of equity might enforce it even if the result would be a serious injury to the servient estate, but it will not extend its strong arm to harm one party without helping the other, for that would be unjust. An injunction that bears heavily on the defendant without benefiting the plaintiff will always be withheld as oppressive.' " (*McClure* v. *Leaycraft*, 183 N. Y. 36, 44 [5 Ann. Cas. 45, 75 N. E. 691, 693].)

From an examination of the Downs case it appears that the changes that had taken place in the territory surrounding the tract were not as complete as the changes

that have taken place in the territory immediately adjacent to Shatto Place tract. In the Downs case the only changes relied upon were those that had taken place outside the tract. In the instant case, as we have already seen, in addition to the changes outside the tract, material changes have taken place inside the tract. If the rule of the Downs case is still the law of this state, there can be no doubt that the judgment appealed from in this case must be affirmed.

Appellants strenuously contend, however, that the Downs case has been overruled by the case of *Strong* v. *Hancock, supra.* We do not think that this is so. In the Hancock case (involving, as already pointed out, part of the property involved on this appeal) the trial court on substantially conflicting evidence, found that although the changed conditions as they existed in 1923 had made the property sought to be released from the covenants more valuable for business than for residential purposes, such changed conditions did not affect the desirability of the property for residential purposes. In the instant case, the court found, as already pointed out, that the defendants' lots are no longer "suitable or desirable for residential purposes"; that said lots have "no market value for residential purposes but are essentially business property"; that to enforce the restrictions against defendants would cause irreparable damage without materially benefiting the plaintiffs. In other words, both cases recognize that, under certain circumstances, restrictive covenants will not be enforced, but in the Hancock case it was found, on conflicting evidence, that those circumstances were not present, while in the Downs case, on conflicting evidence, it was found that such circumstances were present. Whatever verbal inconsistency may exist between the two cases was clearly set at rest by the decision of this court in the case of *Hess* v. *Country Club Park* (filed August 31, 1931), 213 Cal. 613 [2 Pac. (2d) 782]. In that case it was specifically pointed out that the only changes that had occurred were outside the tract. On findings substantially the same as those in *Downs* v. *Kroeger, supra,* this court affirmed the judgment of the trial court, refusing to enforce the restrictions, citing and relying upon the Downs case. It is our opinion that all three cases are consistent and

stand for the principle that findings of the trial court, based upon substantially conflicting evidence, are binding in this court on appeal.

It is likewise contended by appellants that the judgment in *Strong* v. *Hancock, supra,* acts as an estoppel in this action, for the reason that the two cases involve the same property and the same parties, or those privy to them. No such estoppel exists. That case merely decided that, as conditions existed in 1923, a release from the covenant was not warranted. The present judgment is based upon the conditions as they existed in 1928, when this action was tried. The issues raised in the instant case are materially different from those litigated in 1923. As shown by the findings here under consideration, a great many material changes in the conditions affecting the property have occurred since that date. The doctrine of *res judicata* was never intended to operate so as to prevent a re-examination of the same question between the same parties where, in the interval between the first and second actions, the facts have materially changed or new facts have occurred which may have altered the legal rights or relations of the litigants. (*Matter of Snowball,* 156 Cal. 240 [104 Pac. 444]; *Williamson* v. *Grider,* 97 Ark. 588 [135 S. W. 361]; 34 Cor. Jur. 905, sec. 1313.) These cases are also authority for the point that when the second action is tried it is permissible for the court to consider, not only the facts that have occurred since the prior suit, but it may and should consider all the facts that exist, both prior and subsequent to the first action, so as to determine properly what effect all of the facts, as they exist at the time of the second trial, have on the rights of the parties. This rule is a reasonable one, particularly as applied to such cases as the one here under consideration. A change in the character of any neighborhood from residential to business in nature cannot be said to be the result of any one business invasion. Each separate business structure, when considered together with those already erected, has its effect on the restricted area. The effect of each business structure located near the tract continues until finally the cumulative effect of all the business invasions on the restricted area is such that to enforce the restrictions would be inequitable and oppressive as to one party, and would not materially benefit the other.

Obviously, during the period of transformation, there are times when the changes as they then exist are not of such a character or degree as to warrant the court in releasing an owner from the covenant. However, this does not mean that, because a court has occasion to consider the effect of such changes during some early stage of the transformation, such court cannot later consider the effect of the early changes, when coupled with later changes that have taken place. The 1923 judgment merely established that at that time the changes were not of such a character or of such a degree as to warrant denying the injunction. It did not establish that the changes up until 1923 had not affected the property at all. We are of the opinion that the trial court properly considered all the changes that had taken place in the surrounding territory from 1905 to 1928.

 Appellants emphasize the fact that the Alberts acquired the lots here in question during the pendency of the former action instituted by Strong. It is also pointed out that the lessee Crawford leased the property for others who intended, if possible, to break the covenants. These parties acted on advice of counsel to the effect that the covenants were no longer enforceable. Appellants contend that a deliberate violator of a restriction is entitled to no consideration at the hands of a court of equity and, therefore, the injunction should be granted, as against these particular defendants. We cannot follow the logic of this reasoning. If defendants have little equity on their side, plaintiffs have even less, for they are attempting to use the equity courts to enforce what the trial court has found to be a mere barren right. The reasoning of the New York court of appeals in the case of *Forstmann* v. *Joray Holding Co.*, 244 N. Y. 22 [154 N. E. 652], seems applicable here. In that case, at page 655, it was said: "The owner of the lot at the time he conveyed to defendant Finch had certain rights under the decided cases. That he did not have the courage or rashness or the desire to assert such rights does not affect the situation. Defendant Finch bought all his rights, including the right to avoid the restrictive covenant, if its force was spent. If defendant Finch was fast to build, plaintiffs were slow to invoke the process of the court to preserve the *status quo*. If defendants would disregard the restrictive agreement, plain-

tiffs are seeking the aid of the courts to enforce a barren right. Considering the equities—all the facts and circumstances which help to show what is just and right between the parties—we find that, although defendants proceeded with full knowledge of the facts, and with notice of plaintiffs' claim, they had good reason to doubt whether, by reason of the change in the condition of the neighborhood and the short remaining life of the restrictive covenant, equity would enforce such rights as the plaintiffs claimed. They were not defiantly disregarding plaintiffs' rights, but were asserting their own conflicting rights.''

It should be noted, as was done in *Downs* v. *Kroeger, supra,* that the conclusion here reached affects only the particular properties of plaintiffs and defendants, and it does not by any means follow that the integrity and validity of the restrictions obtaining as to the other property in this subdivision are in any way affected. The facts and circumstances of each case must be considered as the need therefor arises.

The judgment appealed from is affirmed.