**SAFE DEPOSIT & TRUST CO. OF BALTIMORE v. MAGRUDER, Former Collector of Internal Revenue.**

**Civil Action No. 2516.**

District Court, D. Maryland.

April 22, 1946.

Venable, Baetjer & Howard, of Baltimore, Md. (Harry N. Baetjer, Hunter H. Moss, Stuart S. Janney, Jr., and Edmund P. Dandridge, Jr., all of Baltimore, Md., of counsel), for plaintiff.

Bernard J. Flynn, U. S. Atty., of Baltimore, Md., for defendant.

WILLIAM C. COLEMAN, District Judge.

This is a suit brought by an executor for refund of Federal estate taxes. By way of affirmative defense, the Collector of Internal Revenue asserts that he is entitled to a dismissal of the suit on the ground that a judgment of dismissal with prejudice, entered by this Court pursuant to a compromise settlement, in a prior suit brought by the same executor against the Collector for refund of Federal estate taxes paid on behalf of the same estate, is a bar to the present suit on the principle of res adjudicata.

There is no question at issue except this one of res adjudicata. The material facts leading up to the institution of the present suit are as follows: The plaintiff, Safe Deposit & Trust Company of Baltimore, as executor of the Estate of Thomas C. Jenkins, deceased, filed in due course an estate tax return and paid the tax indicated as due thereby in the sum of $1,162,423.64. The defendant, the Collector, subsequently made a deficiency assessment against the estate of $835,489.68, with interest, which the executor paid under protest and seasonably filed a claim for refund. This claim involved only three matters: (1) inclusion in the gross estate of the value of certain property transferred by the decedent prior to his death; (2) similar inclusion of the value of certain property passing under powers of appointment exercised by the decedent; and (3) valuation of certain securities. This claim was rejected on all three issues, whereupon suit was instituted against the Collector in this Court, but before being reached for hearing, the

attorneys for the executor offered to settle the suit for 50% of the amount claimed. This offer was accepted by the Commissioner of Internal Revenue and a certificate of overassessment was issued on April 14, 1943, which provided as follows:

"Amount of $443,105.95 to be received in settlement, with interest thereon at six percent per annum from July 3, 1940.

"This certificate of overassessment is issued pursuant to the directions contained in letter from the Department of Justice dated November 12, 1942. Under such directions payment of the sum mentioned herein is made *in full settlement of all issues involved in the case* of Safe Deposit and Trust Company of Baltimore, Executor of the Estate of Thomas C. Jenkins, v. Magruder, *now pending* in the United States District Court for the District of Maryland, and dismissal of said action with prejudice is to be entered." (Italics inserted.)

A stipulation was filed in the proceedings which recited that "It is hereby stipulated by and between the parties of the above entitled case by their respective attorneys that this case be dismissed with prejudice," and pursuant thereto, this Court signed the following order: "Ordered as above stipulated this 22nd day of May, 1943." Up to this time attorneys for the executor had submitted no bill for their services in connection with the proceedings just referred to, nor had the matter of their compensation been referred to in connection with the litigation or its settlement. It was not until after the settlement that these attorneys submitted their bill for services which was in the amount of $25,000 and which, after allowance by the Orphans Court for Baltimore County, was duly paid by the Trust Company, executor. Thereupon, the executor filed seasonably, that is, on July 2, 1943, a second claim for refund, contending that it was entitled to deduct from the gross estate of the deceased the amount of its attorneys' fee just mentioned, together with certain other expenses of administration not known or payable at the time of the filing of the first claim for refund. These total deductions so claimed, including the attorneys' fee of $25,000, resulted in a claim for refund in the amount of $12,-006.40. On February 16, 1945, the Commissioner rejected this claim in its entirety on the ground "that the payment previously made following negotiations for settlement of the suit in the District Court of the United States for the District of Maryland entitled Safe Deposit and Trust Company of Baltimore, Executor of the Estate of Thomas C. Jenkins, deceased, v. M. Hampton Magruder, Collector of Internal Revenue, and the dismissal of the suit with prejudice as a result of the settlement, constitute a bar against the allowance of the claim." As a result of this rejection by the Commissioner, the present suit was filed on March 23, 1945. At the trial, counsel for the executor conceded that the other and relatively minor item of administration expense that had been included in the second claim for refund might properly be treated as barred from consideration in the present suit, because impliedly embraced in the settlement of the prior suit. Accordingly, the issue here will be treated as involving only the attorneys' fees.

■■ The applicable statutes and regulations expressly provide that among the allowable deductions from the gross estate are attorneys' fees. Revenue Act 1932, § 805, 26 U.S.C.A. Int.Rev.Code, § 812; Regulation 80, Art. 32. Also, it is conceded in the present case that this second claim for refund was seasonably filed, as was also the present suit. See Revenue Act 1932, § 810, 26 U.S.C.A. Int.Rev.Code, § 910; Regulation 80, Art. 99; Revenue Act 1932, § 1103, 26 U.S.C.A. Int.Rev.Code, § 3772 (a) (2). It is, likewise, clear that, if each claim for refund of estate taxes is timely, there is no limit to the number of such claims that may be filed by the taxpayer. 26 U.S.C.A. Int.Rev.Code, § 910; Pacific Mills Co. v. Nichols, 1 Cir., 72 F. 2d 103. But a taxpayer may not maintain a suit for refund except upon the grounds specified in a claim previously and properly filed in accordance with the regulations. United States v. Felt & Tarrant Mfg. Co., 283 U.S. 269, 51 S.Ct. 376, 75 L.Ed. 1025. None of these things is disputed on behalf of the Collector. Nevertheless, it is asserted that the judgment of dismissal with prejudice, entered by this

Court in the first suit brought by the executor, is an absolute bar to the present suit, and in support of this position the Collector relies primarily upon Cleveland v. Higgins, 2 Cir., 148 F.2d 722, certiorari denied 66 S.Ct. 27, a decision of the Circuit Court of Appeals for the Second Circuit. He asserts that the facts in that case are indistinguishable from those in the case now before us.

In the Cleveland case, a deficiency in Federal estate taxes had been assessed and collected, and the claim for refund filed. There, just as here, there was no deduction claimed on account of attorneys' fees. There also, just as in the present case, the suit was settled and thereafter was dismissed with prejudice, whereupon the executors filed a claim for refund on the ground that the estate was entitled to a deduction for attorneys' fees earned in connection with the prior litigation. This second claim was rejected and the taxpayer filed suit to recover the estate taxes embraced in his claim for refund. The Government defended on the same ground that is asserted here. The lower court sustained the taxpayer, D.C., 50 F.Supp. 188, but the Circuit Court of Appeals reversed on the ground that the amount owing to the attorneys, while properly deductible as administration expenses in computing the net estate for estate tax purposes, could, and therefore should have been included by estimation in the first claim, and that therefore the settlement and dismissal of the first suit was res adjudicata of the subsequent claim.

The Court's reasoning is best understood by quoting at some length as follows from the closing paragraphs of the opinion, 148 F.2d 722, 724, 725:

"We see no sound reason why a fair estimate of attorneys' fees which an executor reasonably expects he will have to pay when he files a claim for refund of overpaid estate taxes cannot be made in part the basis of that claim though the fees are not ascertainable in the correct amount as of that time. If thus claimed they may be treated by way of allowance or disallowance subject to final adjustment exactly as in the case of prospective attorneys' fees at the time the return is filed. This litigation is a good example of what may otherwise happen within the period limited for filing refund claims. The filing and rejection of a claim followed by suit and judgment with consequent expenses of administration by way of attorneys' fees diminishes the net taxable estate, and that diminution is made the basis of another refund claim which is rejected. Then another suit may be brought and more attorneys' fees which are deductible may be paid and the consequent lessening of the net estate made the basis for repeating the same procedure until the lapse of time puts an end to endeavor. If, however, such attorneys' fees as an executor reasonably expects to have to pay when a refund claim is filed are reflected in the claim, the allowable deduction from the gross estate may be shown and given effect, after amendment if necessary, in the disposition of the claim by administrative action and by suit, if suit has to be brought, so that the expenses of the litigation which follows a rejection of that claim will not give rise to an additional claim for refund.

"But apart from the practical advantage of doing away with such an element of uncertainty in the collection of estate taxes, the principle underlying the doctrine of res adjudicata applies to suits for the collection of overpaid taxes. In this instance the executors knew when the first refund claim was filed that resulting attorneys' fees would have to be paid. They could have been estimated as accurately as possible and made a basis for the claim. By the time the suit had been pending to the point where the complaint was about to be dismissed, the fees of the attorneys could easily have been ascertained. In the unlikely event that such scrupulous procedure had been insisted upon, the refund claim could have been amended by the substitution of the correct amount for the estimate, and the amount to be refunded as a condition precedent to the dismissal of the complaint computed accordingly. The final judgment in that suit was, therefore, res adjudicata as to the amount of the overpayment and barred the present action. Guettel v. United States, supra."

In the Cleveland case, the Court apparently relied strongly upon Guettel v. United

States, 8 Cir., 95 F.2d 229, 118 A.L.R. 1060, a decision of the Eighth Circuit Court of Appeals, certiorari denied, 305 U.S. 603, 59 S.Ct. 64, 83 L.Ed. 383. That case, however, while involving estate taxes, was decided upon facts substantially different from those in the Cleveland case and in the present suit. That is to say, in the Guettel case, a judgment had been obtained in the Court of Claims by the taxpayer for so much of the overpayment of the tax as was due to the inclusion of the value of certain insurance policies which were not a part of the gross estate, while the subsequent action was for recovery for so much of the overpayment as was due to the inclusion of the value of certain real estate. The taxpayer had not claimed refund for inclusion of the realty in the prior suit in the Court of Claims because, at the time of that suit, there existed a decision of the Court of Claims that the value of real estate was to be included, but later, after the taxpayer recovered the judgment in the Court of Claims, the Circuit Court of Appeals for the Eighth Circuit decided, contrary to the Court of Claims, that the value of real estate was not required to be included in the gross estate under the Revenue Act of 1918. The Circuit Court of Appeals held that under these circumstances there was but one cause of action for recovery of the excess, saying, 95 F.2d 229, 230, 231: "The appellants were not at liberty to split up their claim for recovery of their overpayment of the estate tax, and to prosecute it piecemeal or to present in their first suit only a portion of the grounds upon which they based their claim that the tax had been overpaid, and leave another ground or other grounds to be presented in a subsequent action."

In reply to the argument that the rule of res adjudicata was, nevertheless, not applicable because of appellant's justifiable lack of knowledge of the law, the Court said, 95 F.2d 229, 231, 232:

"We think it is not necessary to decide whether, in this situation, the failure of the appellants to bring into their proceedings in the Court of Claims, as a ground for the recovery of the overpayment of the estate tax, their erroneous inclusion of the value of Missouri real estate in gross estate,

was justifiable, as they claim, or was not justifiable, as the government claims. * * *

"We have been unable to find * * * that the Supreme Court of the United States has ever recognized ignorance or mistake as justifying a refusal to apply the rule that a prior judgment upon the merits is a bar to a second action upon the same claim or demand. That court, as already pointed out, has recently said, without any qualifying language, that such a judgment 'is an absolute bar to the subsequent action.' Tait v. Western Maryland Railway Co., supra, 289 U.S. 620, 623, 53 S.Ct. 706, 707, 77 L.Ed. 1405."

It will thus be seen that the value of the real estate in the Guettel case was something which was definitely known at the time of the first suit, and was therefore unlike the attorneys' fee in the present suit, the amount of which was not known. It was not even referred to in any of the negotiations that led up to the settlement or at the time of the settlement itself, because the major portion of the services which it represented not only had not been rendered, but their character and extent were capable of only the most general anticipation, since it was not known whether the earlier suit would be prosecuted to a finality on its merits, with a likelihood of an appeal or appeals, or would, as ultimately developed, be compromised without trial.

In addition to the Guettel case, the Court, in the Cleveland case, appears to have relied strongly upon Treasury Regulation 80, Art. 34, permitting an executor or administrator in filing an estate tax return, to "deduct such an amount as attorneys' fees as has actually been paid or which at that time it is reasonably expected will be paid." In recognizing that this Regulation did not in terms apply to the precise situation before the Court, since the Regulation was limited to the filing of the return in point of time and in subject matter to what, at the particular time, might reasonably be expected would be paid as attorneys' fees, the Court said, with respect to this Regulation, 148 F.2d 722, 724: "While it does not expressly apply to claims for the refund of taxes paid, it does provide for the deduction of prospective attorneys' fees' which executors

and administrators will incur and have to pay in administering the estate, in computing the net taxable estate subject to adjustment upon final audit. And when a claim for the refund of estate taxes overpaid is filed, an essential element involved is the ·correct amount of the net taxable estate just as it is when a return is filed as a basis for computing that amount."

 This same Regulation is likewise applicable to the present case. However, it is to be noted that the entry on the return for deduction of an item, the exact amount of which is not then known, provided it is ascertainable with reasonable certainty, is permissive and not mandatory. Art. 34 of Regulation 80 is to be read in conjunction with Art. 29, paragraph 2, which reads as follows: "An item *may* be entered on the return for deduction though the exact amount thereof is not then known, *provided it is ascertainable with reasonable certainty,* and will be paid. *No deduction may be taken upon the basis of a vague or uncertain estimate. In the event the amount* of the liability *was unascertainable* at the time of final audit of the return by the Commissioner, and, as a consequence, deduction was not allowed therefor in such audit, *and subsequently the amount of the liability is ascertained, relief may be sought as provided by Secs. 80.76 80.99."* (Italics added) Sec. 80.76 is not relevant, but Sec. 80.99 refers to claims for refund and provides, among other things, that "The claim must set forth in detail and under oath each ground upon which a refund is claimed, and facts sufficient to apprise the Commissioner of the exact basis thereof. Any claim which does not comply with the requirements of the preceding sentence will not be considered for any purpose as a claim for refund."

 It is worthy of note that Regulation 80 has been superseded by Regulation 105, effective February 18, 1942, and made applicable to estates of decedents dying after February 10, 1939; that Section 81, Art. 29, of this later Regulation contains the exact wording of Article 29 of Regulation 80, just referred to, and also that Article 34 of Section 81 of Regulation 105 is substantially the same as Article 34 of Regulation 80, except that the first section reads: "The executor or administrator, in filing the return, may deduct such an amount of attorneys' fees as has actually been paid, or *in the amount that at the time of such filing it is reasonably expected will be paid.* (Italics inserted). The italicized portions of the later Regulation just quoted indicate that this later Regulation clarifies the earlier one, by making it definite that only the amount which can be reasonably expected to be paid *at the time of the filing of the return* may be included. As we have already pointed out, in 1940, when the return in the present case was filed, the executor could not determine how much it might reasonably be required to disburse in attorneys' fees and, as a matter of fact, it was not until some three years later that the services, for which the fees here involved were charged, had been rendered.

The rule embraced in the Treasury Regulations which we have just analyzed that an item cannot be made the basis of an allowable deduction unless the exact amount of such item is ascertainable with reasonable certainty, has been followed in court decisions. For example, in Proctor v. Hassett, D. C., 52 F.Supp. 12, it was held that where executors' attorneys were to receive a $25,000 fee if alleged overpayments of estate taxes were recovered, but there was no agreement as to the fee if the executors lost the case, such $25,000 fee was not deductible in determining testator's gross estate for purposes of taxation. The Court said, 52 F.Supp. 12, 19: "The Commissioner could not have reasonably expected that the fee of $25,000 would be paid. In fact, the Commissioner felt that the plaintiff should not prevail in this case, as is apparent from· his decision." To the same effect is First National Bank of Birmingham v. United States, D. !C., 25 F.Supp. 816.

 The doctrine of res adjudicata rests on two maxims: (1) That a person should not be vexed more than once for the same cause; and (2) that it is in the public interest that there be an early end to litigation. 2 Freeman on Judgments, 5th Ed., Sec. 626, page 1319. While Congress has not limited the number of estate tax refund claims which may be filed, it has imposed, as we have seen, a time limitation with re-

spect to all claims and suits arising out of claims. In the present case, no part of the attorneys' fee in issue was made the basis of any former claim. At the time the first claim was filed and until after the settlement of the first suit was complete, there was no mention between the parties of a claim for attorneys' fee, much less of its amount, which obviously was not capable of being ascertained with any reasonable certainty until the services which it represents had been performed, the major portion of which were not and could not have been performed, or their extent known with any degree of certainty until after the settlement of the first suit became an accomplished fact. This, as we have seen, did not occur until some three years after the first claim was filed.

The rule which must control in the present case is thus stated by the Supreme Court in Larsen v. Northland Transportation Co., 292 U.S. 20, 25, 54 S.Ct. 584, 585, 78 L.Ed. 1096: "The established rule in this court is that if, in a second action between the same parties, a claim or demand different from the one sued upon in the prior action is presented, then the judgment in the former cause is an estoppel 'only as to those matters in issue or points controverted, upon the determination of which the finding or verdict was rendered.' Bates v. Bodie, 245 U.S. 520, 526, 38 S.Ct. 182, 184, 62 L.Ed. 444, L.R.A.1918C, 355; United States v. Moser, 266 U.S. 236, 241, 45 S.Ct. 66, 69 L.Ed. 262; United Shoe Machinery Corp. v. United States, 258 U.S. 451, 458, 42 S.Ct. 363, 66 L.Ed 708. 'While a defendant must bring forward all purely defensive matter, he is not barred by a former judgment against him as to any matter which he was not bound to present and which was not in fact litigated. A judgment is not conclusive of those matters as to which a party had the option to but did not in fact put in litigation in the action.' Freeman on Judgments (5th Ed.) § 786."

The gist of the Larsen decision is that while in a suit for damages against a shipowner in a State Court, that Court might have determined the shipowner's claim for limitation of liability, it was not obligatory upon the shipowner to claim such limitation in that forum and that not having done so, after judgment against him for damages in the State Court, he still had the right to institute limitation proceedings in a Federal Court. The fact that this was a proceeding in admiralty does not make the rule there announced any the less applicable to the present case, because we do not find that there is any different principle of res adjudicata to be applied in tax, as distinguished from other types of litigation, although the great volume and complexity of tax litigation frequently present questions of increased difficulty. In other words, the rule should not be strained merely because its application is invoked in a tax case.

Such decisions as Tait v. Western Maryland Railway Co., 289 U.S. 620, 53 S.Ct. 706, 77 L.Ed. 1405; Blair v. Commissioner, 300 U.S. 5, 57 S.Ct. 330, 81 L.Ed. 465, and State Farm Mutual Insurance Co. v. Duel, 324 U.S. 154, 65 S.Ct. 573, 89 L.Ed. 812, disclose some of the more recent developments in the application of the rule of res adjudicata in tax cases In the Tait case, the Court held that a prior decision which recognized the right of the taxpayer in a certain tax year to take a deduction from gross income, based on the amortization of bond discount, was binding when the same question was later raised as to subsequent tax years in a suit between the same parties. In the Blair case, the Court held that a Federal Court decision to the effect that assignments of income by a beneficiary of a trust estate to his children were invalid, was not res adjudicata as to subsequent tax years because in a later State Court suit, it had been established that such assignments were valid. To the same effect was the decision in State Farm Mutual Insurance Company, supra, where the same rule was applied with respect to an intervening decision of a Federal Court.

While none of the cases just referred to involved facts similar to those now before us, we, nevertheless, believe that the ratio decidendi of those decisions impliedly supports the executor's position in the present case.

Counsel for the Collector cite Moir v. United States, 149 F.2d 455, a recent de-

cision of the Circuit Court of Appeals for the First Circuit. That case, however, involved a decision of the Board of Tax Appeals (now the Tax Court) and the statutory procedure incident to such a suit. In the Moir case, it was held that since an executor had elected the Tax Court as a forum for the re-determination of estate tax deficiency, he could not thereafter bring a court action for recovery of any part of such tax because the provisions of Section 319(a) of the Revenue Act of 1926, 26 U.S.C.A. Int.Rev.Acts, page 259, expressly precluded such suit. We, therefore, believe that the Moir case is not to be treated as apposite to the present situation.

In Maddrix v. Dize, 153 F.2d 274, the Circuit Court of Appeals for this Circuit announced a rule in relation to the construction to be given to an appellate court's mandate which while not, of course, decisive of the present case, nevertheless, seems to support the conclusion which we feel must be reached in this case that the executor must prevail.

In the Maddrix case it was held that in an action under the Fair Labor Standards Act, 29 U.S.C.A § 201 et seq., where a judgment for the plaintiff on the merits, including an attorney's fee for services in this Court, had been affirmed by both the Circuit Court of Appeals and the Supreme Court without modification, and no claim had been made in either appellate court for additional attorney's fee for services rendered while the case was on appeal, this Court, nevertheless, had authority to allow an additional fee for legal services in the appellate courts. In its opinion the Circuit Court of Appeals made the following statements which we believe support, by analogy, the view that the judgment of dismissal with prejudice entered by this Court in the first suit is not a bar to the maintenance of the present action, 153 F.2d 276: "The provisions of the mandate of the Supreme Court do not interdict the allowance of an additional fee by the District Court; the mandate merely provides that the District Court shall conduct such proceedings as may be required to give effect to the judgment. The allowance of an additional fee does

not disturb or enlarge the judgment to which the Supreme Court has given its sanction. The matter of an additional fee was not considered by that court and consequently the present application does not fall within the rule that on a mandate of affirmance from the Supreme Court the District Court has no power to rescind or modify what has been established but can only record the mandate and proceed with the execution of the decree that has been affirmed. * * * *"It is true that the judgment affirmed by the Supreme Court included an allowance to the attorney for services rendered in the District Court but it did not recognize the possibility of additional services in appellate courts, nor attempt to estimate the value which such prospective services might have. The present application is outside the scope of the mandate."* (Italics inserted)

It follows from what we have just said that the dismissal with prejudice of the executor's first suit does not operate as a bar to the maintenance of the present suit. This conclusion means that we feel Cleveland v. Higgins, supra, should not be followed in the present case because, summarizing our views, (1) we are not impressed with the similarity or controlling character which the Circuit Court of Appeals for the Second Circuit in that case attributed to Guettel v. United States, supra; and (2) we, likewise, are not impressed with the reasoning of the Court in the Cleveland case with respect to the effect that should be attributed to any Treasury Regulation in support of the Court's conclusion, or to the weight to be given to the practical disadvantages that may flow from a contrary decision.

It is significant that Blair v. Commissioner, supra, although decided in 1937, was not discussed or even cited in either the Guettel case, decided in 1938, or the Cleveland case, decided in 1945, because, although as previously herein noted, certiorari was denied in the Guettel case, the facts in the Blair case are, we believe, sufficiently similar to those in the Guettel case to make it at least somewhat difficult to distinguish the two decisions on principle. It is true that in the Guettel case the taxpayer divided his claim for refund with respect

to one and the same tax, whereas in the Blair case, the taxpayer contested the payment of taxes that were similar but for different years. However, in both cases the law had been changed by judicial decision subsequent to filing of the original claim for refund.

An order will be signed in accordance with this opinion.