**MAGRUDER, Former Collector of Internal Revenue, v. SAFE DEPOSIT & TRUST CO. OF BALTIMORE.**

No. 5553.

Circuit Court of Appeals, Fourth Circuit.

Feb. 3, 1947.

James P. Garland, Sp. Asst. to Atty. Gen. (Helen R. Carloss, Sp. Asst. to Atty. Gen.,

and Bernard J. Flynn, U. S. Atty., of Baltimore, Md., on the brief), for appellant.

Stuart S. Janney, Jr., of Baltimore, Md. (Edmund P. Dandridge, Jr., of Baltimore, Md., on the brief), for appellee.

Before PARKER, SOPER, and DOBIE, Circuit Judges.

DOBIE, Circuit Judge.

Safe Deposit and Trust Company of Baltimore, as executor of the Estate of Thomas Jenkins, deceased, duly filed a federal estate tax return and paid the Collector $1,162,423.64, the amount of the estate tax shown on the return. Subsequently, the executor, upon a deficiency assessment of $835,489.68 by the Collector, paid this amount with interest, under protest, on July 3, 1940, and seasonably filed a claim for a refund. This claim for refund was rejected by the Collector, whereupon the executor instituted an action upon its claim against the Collector in the United States District Court for the District of Maryland.

After extended negotiations, the executor, on November 3, 1941, submitted an offer "to accept in full settlement of said suit fifty per cent of the amount claimed." This offer was accepted by the Government on November 12, 1942, more than a year later; the money was paid to the executor and by stipulation of both parties the action instituted by the executor against the Collector was dismissed *with prejudice* May 22, 1943. The executor duly filed a second claim for refund of estate tax based on the contention that a fee of $25,000 paid to Venable, Baetjer & Howard, attorneys for the executor in prosecuting the asserted right to a refund of the money paid under the deficiency assessment, should be deducted from the gross estate. Upon the rejection of this claim, the instant action was instituted and from a judgment in the District Court in favor of the executor, the defendant Collector has duly appealed. The sole question involved in this appeal is the correctness of the ruling by the District Court that the dismissal of the prior action did not constitute, under the doctrine of res judicata, a bar to the instant action. And in this connection the Collector vigorously challenges the District Judge's finding: "The amount of the attorneys' fee was not ascertained and could not have been ascertained with any degree of accuracy until after the first suit had been settled and dismissed." The opinion of the District Court is reported in 65 F.Supp. 783.

The doctrine of res judicata, well known in our jurisprudence, has figured in numerous decisions involving the precise extent and the exact scope of its application. Usually the doctrine is said to rest on two ancient maxims of the law: (1) A person should not be vexed more than once for the same cause; (2) it is in the public interest that there be an early end to litigation. In a leading work in this field, 2 Freeman on Judgments 5th Ed., 1925, § 712, at page 1501, it is stated:

"Where a right or title comes directly in issue the parties are bound to bring forward every matter or ground which might be urged to establish or defeat it and will be estopped by the adjudication from attempting to relitigate the same right or title upon other or different evidence or grounds which might have been urged in the first action. Even a new evidentiary, as distinguished from a new ultimate fact, does not change the situation. But from the rule that an adjudication affects no claims which the parties had no opportunity to litigate, it results that no judgment or decree can prejudice rights which had not accrued to either of the parties at the time of its rendition. A decision that a right exists, or that a wrongful act has been committed, leaves the party at liberty to show at a future time that since the decision was pronounced the right has expired or the wrong has been abated. And the same is true with respect to a decision that no right or cause of action exists; it does not bar a second action when new facts have created a right or cause of action. The fact that the same subject matter was involved in the former action is wholly immaterial.

\* \* \* \* \* \*

"Under no circumstances will a judgment or decree take effect upon rights not then existing". Id. § 687, p. 1447.

Id. § 669, p. 1479: "It is, of course, obvious that issues outside the jurisdiction

of the court to determine, cannot become res adjudicata by virtue of its judgment. But even where the matter is not jurisdictional, a judgment is not ordinarily deemed to be an estoppel as to issues which cannot properly be litigated in the proceedings in which it is rendered."

The federal Supreme Court has spoken here in many important cases. See, State Farm Insurance Co. v. Duel, 324 U.S. 154, 65 S.Ct. 573, 89 L.Ed. 812; Blair v. Commissioner, 300 U.S. 5, 57 S.Ct. 330, 81 L.Ed. 465; Larsen v. Northland Transportation Co., 292 U.S. 20, 54 S.Ct. 584, 78 L.Ed. 1096; Tait v. Western Maryland R. Co., 289 U.S. 620, 53 S.Ct. 706, 77 L.Ed. 1405; Cromwell v. County of Sac, 94 U.S. 351, 24 L.Ed. 195. In the Larsen case (292 U.S. at page 25, 54 S.Ct. at page 585) it was said:

"The established rule in this Court is that if, in a second action between the same parties, a claim or demand different from the one sued upon in the prior action is presented, then the judgment in the former cause is an estoppel 'only as to those matters in issue or points controverted, upon the determination of which the finding or verdict was rendered.'"

The Government seeks a reversal of the instant case, relying heavily (as well it might) on Cleveland v. Higgins, 2 Cir., 148 F.2d 722, certiorari denied 326 U.S. 722, 66 S.Ct. 27. That decision is admittedly in point and it appears to be the only pronouncement by a federal appellate court on the direct question before us. Judge Coleman declined to follow the Cleveland case on the grounds that he disapproved the reasons for the decision and further because the Cleveland case relied heavily on Guettel v. United States, 8 Cir., 95 F.2d 229, 118 A.L.R. 1060 certiorari denied 305 U.S. 603, 59 S.Ct. 64, 83 L.Ed. 383, which Judge Coleman distinguished on the score that "the value of the real estate in the Guettel case was something which was definitely known at the time of the first suit, and was therefore unlike the attorneys' fees in the present suit, the amount of which was not known." [65 F.Supp. 787] We find ourselves in agreement with the views expressed by Judge Coleman.

The Cleveland opinion admits that the fees of the attorneys, such as are here involved, are deductible if properly claimed. Great stress is laid, too, on Treasury Regulation 80, Article 34 which provides: "The executor or administrator, *in filing the return,* may deduct such an amount of attorneys' fees as has actually been paid, or in the amount that at the time of such filing it is reasonably expected will be paid." (Italics ours.) But Article 29 of this same Regulation provides: "An item may be entered *on the return* for deduction though the exact amount thereof is not then known, provided it is ascertainable with reasonable certainty, and will be paid. *No deduction may be taken upon the basis of a vague or uncertain estimate.*" (Italics ours.) Again, Article 99 of this Regulation states: "The *claim must set forth in detail and under oath each ground upon which a refund is claimed,* and *facts* sufficient to apprise the Commissioner of the *exact basis* thereof. Any claim which does not comply with the requirements of the preceding sentence will not be considered for any purpose as a claim for refund." (Italics ours.) It may be noted that Articles 29 and 34 refer specifically in terms to the return.

Under the practice of Maryland an executor is not ordinarily represented by an attorney in the probate courts, and no allowance will be made out of an estate for attorneys' fees unless extraordinary circumstances require the employment of an attorney. If an attorney is employed for routine matters, the executor must pay the fee out of his commissions. In the present case the executor had not employed any attorney when it filed the original return on May 25, 1939, nor was there any reason at that time for it to anticipate that any attorneys' fees would be incurred in the settlement of the estate for which a deduction could be claimed under the regulation. Only after the deficiency assessment did the executor employ attorneys. And the fees of attorneys paid by an executor are allowed out of the estate, in Maryland, only upon the approval of these fees by the Orphans' Court. Certainly any attempt to estimate the amount of attorneys' fees at the time of the

executor's return, since not even the employment by the executor of an attorney was then contemplated, must obviously have been "vague and uncertain."

Equally true is it that the amount of the fees of the attorneys could not have been determined with any degree of certainty when the suit for refund was filed. No one could then tell the outcome or how protracted might be the litigation. We must, therefore, agree with Judge Coleman's finding that these fees "could not have been ascertained with any degree of accuracy until after the first suit had been settled and determined."

We are not impressed by the suggestion in the Cleveland case of the possibility of a long series of suits, each seeking a deduction for the attorneys' fees in the preceding suit. For all practical purposes, the negligible amounts that could thus be realized and the statute of limitations would negative any very extensive use of such proceedings.[1]

Nor can we accept as controlling here the contention (strongly stressed by the Government) that the federal estate tax is a unitary claim, a single cause of action which cannot be split. Tax statutes are intensely realistic. They must be construed and administered in the light of practical experience rather than in the spirit of analytical conceptualism. And it is freely admitted that any number of separate claims for refund, arising out of supervening facts, may properly be made, provided only these are filed within the period specified in the applicable statute of limitations.

Obviously, the deductibility of the attorneys' fees was not an issue in the first suit for refund. As found by Judge Coleman:

"The only three issues involved were:

"(1) Whether the value of certain property transferred by the decedent in his lifetime should be included in his estate as property transferred in contemplation of death;

"(2) Whether the value of the property of certain trusts passing under powers of appointment exercised by the will of the decedent should be included in his gross estate as property passing under general powers of appointment exercised by the decedent; and

"(3) The valuation of certain assets of the estate."

And, in the Commissioner's Certificate of Overassessment, it is expressly stated:

"This certificate of overassessment is issued pursuant to the directions contained in letter from the Department of Justice dated November 12, 1942. Under such directions payment of the sum mentioned herein is made in full settlement of all issues involved in the case of Safe Deposit and Trust Company of Baltimore, Executor of the Estate of Thomas C. Jenkins v. Magruder, now pending in the United States District Court for the District of Maryland, and dismissal of said action with prejudice is to be entered."

At the time of the first suit for refund the law to be derived from the cases seemed to indicate that attorneys' fees such as those here involved could not be estimated in advance and deducted, for such claims had been held to be "vague and uncertain." Proctor v. Hassett, D.C.Mass., 1943, 52 F. Supp. 12; First National Bank of Birmingham v. United States, D.C.N.D.Ala., 1939, 25 F.Supp. 816. And, in the Cleveland case, Judge Leibell in the District Court had denied the Collector's motion to dismiss, 50 F.Supp. 188. The case was tried by another judge who entered a judgment for plaintiff. The decision of the Circuit Court of Appeals in the Cleveland case was handed down after the filing of the first suit for refund in the instant case. And it seems that the Commissioner of Internal Revenue had in practice originally taken the position upheld in these earlier cases. See (both recently decided by our Court) Maddrix v. Dize, 153 F.2d 274; Commissioner v. Arundel Brooks Concrete Corporation, 152 F.2d 225, 162 A.L.R. 1200. And, see also, Hurd v. Albert, 214 Cal. 15, 3 P.2d 545, 76 A.L.R. 1348.

Hindsight is, of course, much clearer than foresight. It is, therefore, easy now to suggest that the executor's attorneys here should have expressly raised the ques-

---

[1] See 59 Harv.L.Rev. note, 1322, 1323.

tion of the deductibility of the attorneys' fees before settlement of the suit for refund. Under the then existing facts and the then seeming state of the law, it might well be asked whether the obligation to raise this question at that time did not rest rather on the Government. As a fact, the question was not then raised or even suggested by either party.

Every good doctrine or principle of law has sometimes been unduly stretched to encompass injustice. Res judicata is no exception. The propriety of the deduction here claimed is admitted; there was certainly grave doubt as to just how the claim could be asserted. We think, under all the circumstances of the instant case, that equity, good conscience and fair play justify Judge Coleman's view that res judicata should not serve as a bar to the present action which seeks a deduction of the attorneys' fees here (for the purpose of the federal estate tax) from the gross estate.

The judgment of the District Court is affirmed.

Affirmed.