## MARTIN v. BRODRICK.
### No. 3270.

United States District Court
D. Kansas, Second Division.

Jan. 6, 1949.

W. D. Jochems and Emmet A. Blaes, (of Jochems, Sargent & Blaes), both of Wichita, Kan., for plaintiff.

Lester Luther, U. S. Atty., of Topeka, Kan., for defendant.

MELLOTT, District Judge.

The issue before the court is whether an additional refund of estate tax may be allowed, the funds of the estate having been expended for attorneys' fees and court costs in securing an earlier refund of estate tax, the amount so expended being in excess of the amount claimed in the estate tax return. The basic facts are, by this reference, found to be as stipulated and as admitted in the pleadings.

Rosa Baumstark, a resident of Sedgwick County, Kansas, died testate on October 15, 1943. Her estate was duly administered in the Probate Court of that county. Her executors filed an estate tax return and paid the tax shown to be due. Attorneys' fees in the amount of $6,500.00 were claimed, allowed and are not now in controversy. Upon audit of the return additional tax in the amount of $36,966.44 was assessed and paid, the increase in tax resulting principally from the inclusion in gross estate of property transferred by the decedent under circumstances which the reviewing authorities had held constituted transfers or gifts in contemplation of death.

Claim for refund of the additional tax paid under the circumstances outlined above was duly filed and rejected. Suit was then instituted in this court, and, following trial to a jury, judgment was entered in favor of the executors for $35,544.58. On May 31, 1947 the judgment with interest, was paid, in the aggregrate amount of $39,568.69.

The original estimate of attorneys' fees, allowed as a deduction from gross estate, did not contemplate litigation over the estate tax. After termination of the litigation and payment of the judgment the executors filed their final settlement and petition for the allowance of fees and expenses in the Probate Court of Sedgwick County. That court, on June 30, 1947, allowed attorneys' fees in the amount of $9,500.00 in connection with the litigation. Such amount, in addition to the $6,500.00 originally estimated and allowed, was paid prior to the institution of the instant suit.

In the estate tax return expenses in the administration of the estate were estimated and allowed in the amount of $215.00. The amount actually paid, including witness fees and expenses incurred in the trial above referred to, was $592.19. The difference between these two amounts, or $377.19, added to the $9,500.00 attorneys' fees, makes the basic amount of $9,877.19 which petitioners contend should be allowed as a deduction from gross estate. If allowed, overpayment in the amount claimed—$2,487.88—results. Claim for refund of such amount was filed and rejected prior to the filing of this case.

Such issue of fact as exists (and no evidence was introduced) stems from a denial by the defendant of paragraph 6 of the complaint. Therein it is averred that plaintiff "had no way of ascertaining to what extent the remaining estate * * * would be diminished by the increased attorneys' fees incurred in the * * * litigation before said litigation had been successfully concluded, and it was not until the 30th day of June, 1947, [date of approval by the Probate Court] that * * * [it was] ascertained said estate had become obligated for additional fees in the amount

of $9,500.00 * * *." On brief the defendant admits that the allegations "are more or less plausible but probably not literally true." He argues that the amount could have been ascertained with such certainty as would have satisfied the regulations of the commissioner in the original refund claim (contemplating the possibility of a rejection and suit) or in a refund claim filed as soon as the refund claim relating to contemplation of death had been denied and as soon as it became evident to the personal representatives that a suit to enforce the claim of overpayment would be necessary, adding "then one suit could have disposed of everything."

Canon No. 12 of Professional Ethics,[1] is cited by counsel for plaintiff, who argues that some of the six considerations recognized as proper "guides in ascertaining the real value of the service" rendered, could "not possibly have been known until the original case was successfully concluded and the estate had received a favorable verdict in the original district court suit." Substantial reliance is also placed upon G.S. (Kansas) 1947 Supp. 59-301(3) and 59-1717, which collectively require that the Probate Court settle the account of the fiduciary and allow compensation for his services and those of his attorneys in amounts determined to be just and reasonable.

Defendant counters with the assertion that plaintiff could, and properly should, have called upon this court to appraise and fix the value of the services, since it had before it the tripartite question: (1) the correct value of the decedent's "net estate" on the critical date; (2) the correct federal estate tax assessable upon its transfer; and, (3) the excess of the amount collected over the tax due, i. e., the amount for which judgment should be rendered.

The question is a difficult one and the right answer is elusive. Courts of Appeal are not in accord. Thus, in Cleveland v. Higgins, 2 Cir., 148 F.2d 722, 723, certiorari denied 326 U.S. 722, 66 S.Ct. 27, 90 L.Ed. 428, cited by the commissioner in his rejection of the claim for refund recovery was denied on the theory that the "tax

[1] The copy examined by the court appears in Volume 156 of the Kansas Reports, published in 1943.

was assessed and paid as a single tax, and a final decision in a suit brought to recover for overpayment is res adjudicata not only as to what was included in the refund claim but as to what might have been included." The view was expressed that "the fact that the refund claim did not cover all which might have been included therein [did not] prevent the judgment from being res adjudicata", in support of which Guettel v. United States, 8 Cir., 95 F.2d 229, 118 A.L.R. 1060, was cited.

Judge Coleman, in Safe Deposit & Trust Co. v. Magruder, D. C., 65 F.Supp. 783, distinguished the Guettel case—as the Circuit Court of Appeals for the Fourth Circuit pointed out in affirming his decision allowing the deduction in Magruder v. Safe Deposit & Trust Co., 159 F.2d 913, 915—"on the score that 'the value of the real estate in the Guettel case was something which was definitely known at the time of the first suit, and was therefore unlike the attorneys' fees in the present suit, the amount of which was not known.'" Both courts allowed recovery in the Safe Deposit & Trust Co. case, pointing out that the deductibility of the attorneys' fees in the first suit for refund had not been an issue and the amount was so "vague and uncertain" that it could not "be estimated in advance and deducted". The Court of Appeals pointed out that neither party had raised the question of the deductibility of the fees at the time judgment was entered in the refund case, suggested that the obligation to raise the question might even have rested upon the government, and concluded that "equity, good conscience and fair play justify Judge Coleman's view that res judicata should not serve as a bar to the present action which seeks a deduction of the attorneys' fees * * *."

The Court of Appeals for this (the Tenth) Circuit appears not to have had the question before it. The Fifth Circuit, in United States v. C. C. Clark, Inc., 159 F.2d 489—albeit by a divided court—followed Cleveland v. Higgins, supra, and the Seventh Circuit has recently done likewise in Van Dyke v. Kuhl, 171 F.2d 187.

■ In the recent case of Commissioner v. Sunnen, 333 U.S. 591, 68 S.Ct. 715, 719, 92 L.Ed. ——, the principles of res judicata, collateral estoppel and stare decisis as applicable to income tax cases were discussed. Much therein said is apposite in an estate tax case. It would serve no good purpose to quote at length from that case. It suffices to point out that well-established principles were reiterated—such, e. g. as "when a court of competent jurisdiction has entered a final judgment on the merits of a cause of action, the parties * * * and their privies are thereafter bound 'not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose.'"

The issue before this court in the first refund action, as pointed out by counsel for the defendant, was the amount of estate tax due, or, otherwise stated, the excess of the amount collected over the tax actually due. That was determined; and upon the basis of that determination the judgment was rendered. Computation of the amount of tax due necessarily included the allowance of all proper deductions. Attorneys' fees and court costs are in that category; and, if claimed prior to the entry of the judgment, could have been allowed, as the court pointed out in the Cleveland case, "subject to final adjustment exactly as in the case of prospective attorneys' fees at the time the return is filed." If "scrupulous procedure" were insisted upon, "the refund claim could have been amended". Whether this court should have been called upon to determine, in the refund case, the amount to be allowed to the attorneys need not be decided. Its unstudied present view is that this question was properly submitted to the Probate Court, under whose supervision the estate was being administered.

Since the issue now before the court arose, the Treasury Department has adopted a new regulation (T.D.5596, December 22, 1947), providing that attorneys' fees incurred, inter alia, in prosecuting a refund claim "should be made at the time of * * * prosecution, but shall not be denied or questioned solely because amount of such fees was not established at time claim was made." It, of course, cannot be applied in the instant suit. It does, how-

ever, indicate an administrative interpretation in accord with the views expressed by the courts in the Cleveland case and in the cases which have followed it. Cf. also Moir v. United States, 1 Cir., 149 F.2d 455.

To apply the principle of res judicata rather than general equitable principles may seem harsh; but this court feels it cannot do otherwise. The judgment previously entered was based upon a determination of the actual value of the net estate. While some courts may refuse to adopt the postulate that "the federal estate tax is a unitary claim, a single cause of action which cannot be split," this court is of the opinion no other view is sound. That being so, judgment must be entered in favor of the defendant. Appropriate journal entry of judgment should be prepared by counsel for the defendant and settled in accordance with the Rules of Civil Procedure, 28 U.S.C.A., and the Rules of Practice of this Court.