RAFAEL BUSCAGLIA, TREASURER OF PUERTO RICO, Petitioner, v. TAX COURT, Respondent; CARMEN DEL TORO RODRÍGUEZ ET AL., Interveners.

No. 245. Argued May 4, 1950.—Decided May 31, 1951.

Víctor Gutiérrez Franqui, Attorney General (Vicente Géigel Polanco, Former Attorney General, in the petition and on the brief), and J. C. Santiago Matos, Assistant Attorney

*General,* for petitioner. *Damián Monserrat, Jr.,* and *Gabriel de la Haba* for interveners, complainants in the main action.

MR. JUSTICE NEGRÓN FERNÁNDEZ delivered the opinion of the Court.

The antecedents of the present case appear in our decisions of *Del Toro* v. *Tax Court,* 65 P.R.R. 58 and *Buscaglia, Treas.* v. *Tax Court,* 68 P.R.R. 406. We shall only refer here to those which are necessary to decide the controversy in the case at bar.

On February 5, 1946 the Treasurer of Puerto Rico notified to interveners herein, as heirs of Fernando del Toro Saldaña—who died in Spain on November 7, 1936—the appraisal made by him of the inheritance estate, as well as the inheritance tax which amounted to $37,301.44, plus interest at the rate of 1 per cent monthly from May 7, 1937, until fully paid. On February 28 of the same year the interveners herein paid the tax to the Treasurer plus the following interest: $20,515.80 covering the period from May 7, 1937 to November 21, 1941, at the rate of 1 per cent. monthly, and $9,511.88 for the period between this last date until February 28, 1946 at the rate of 6 per cent annually. Of the total amount of interest requested by the Treasurer until the day the payment was made — $39,539.53 — there remained unpaid, because claimants did not agree, the sum of $9,511.88 which represented the difference between the rate of 1 per cent monthly interest established by § 9 of Act No. 99 of August 29, 1925, as amended by Act No. 20 of April 27, 1933 for cases of default interest and the annual rate of 6 per cent fixed in such cases by the same § 9 by virtue of the amendment made by Act No. 20 of November 21, 1941.

In a complaint filed March 5, 1946 in the Tax Court the heirs requested that the liquidation and computation of interest made by the Treasurer be declared null and void,

with regard to the interest covering t le period from November 21, 1941 to February 28, 1946 and that an order be entered declaring that the interest sho ild be computed at the rate of 1 per cent monthly, from May 7, 1937 to November 21, 1941 and at the rate of 6 per cent annually from this last date until February 28, 1946, in which date the tax was paid.

The Tax Court rendered a decision granting the complaint, and stated the following:

"It was not until February 5, 1946 that the term of 90 days for payment of the tax began to run without appellants being bound to pay interest. If the tax was paid after the expiration of said period they were bound to pay interest at the rate of 6 per cent per annum — but only, we repeat after the expiration of the 90–day period.

"Of course if they wished to litigate they had to pay the part of the tax with which they agreed. and also file their complaint in this court, attaching a receip; of payment. within the thirty (30) days after being notified of the Treasurer's administrative decision, that is, in the case at bar, on February 5, 1946. See case of Del Toro, *supra*.

"In this petition the *valid* assessment of the tax, as hereinbefore stated, was notified to the heirs on February 5, 1946 and payment was made on the 28th of the s .me month and year. They were not liable, therefore, for any default interest.

"Since interveners paid $30,027.68 interest, without being bound to do so, we must grant the complaint in all its parts, because as stated, they do not have to pay the interest in the present case.

"As we have nothing before us regarding the possible right of appellants to a refund of the interest, it is not necessary to consider said question."

Feeling aggrieved the Treasurer appealed to this Court. The assignments of error set up by him in said case were summarized by us in *Buscaglia, Treas.* v *Tax Court, supra*, in the following single question: Did the Tax Court err in applying to this case the provisions of Act No. 20 of November 21, 1941 (Spec. Sess. Laws, p. 64) which amended

§ 9 of Act No. 99 of August 29, 1925 (Sess. Laws, p. 790) as amended by Act No. 20 of April 27, 1933 (Sess. Laws, p. 232) and in not applying the latter Act which was the one in force at the time of the death of the predecessor in interest which occurred on November 7, 1936?

We affirmed the decision appealed from and held that the Treasurer could not, under the attendant circumstances of said case, deprive the heirs of the benefits of the Act in force at the time the heirs were legally able to comply with the law, that is, to pay the tax. In the last paragraph of our decision we said the following: "Whether or not the intervening heirs were bound to pay the amounts which they paid as interest, or whether or not they are entitled to claim the refund of these amounts, wholly or partially, are questions which cannot be considered by us, since they were not raised by the interveners or decided by the respondent tribunal."

On September 3, 1948 the interveners herein commenced the present suit by filing a complaint in the Tax Court, praying for the refund of the interest paid on the inheritance tax for the period from May 7, 1937 to November 21, 1941 at the rate of 1 per cent annually, that is, a total of $30,027.68. This amount was the one that was paid together with the tax itself, on February 5, 1946 under the terms of § 7 of Act No. 99 of August 29, 1925, as amended by Act No. 20 of November 21, 1941.

The Treasurer prayed for the dismissal of the complaint, on the ground of res judicata. He alleged essentially that in the suit previously filed in the Tax Court, and which ended with our decision in *Buscaglia, Treas.* v. *Tax Court, supra,* the complainants could have claimed, although they actually failed to do so, the refund in full of the interest assessed by the Treasurer, since they did claim a part thereof, and hence that the splitting of their cause of action does not lie.

After denying the dismissal sought as well as the

580

reconsideration of the order denying the dismissal, the Treasurer answered accepting the essential facts of the complaint and reproducing the plea of res judicata. Thus the interveners herein prayed for judgment on the pleadings. The Treasurer agreed that the issue raised was fundamentally a question of law. The lower court granted the complaint and ordered the Treasurer to reimburse the interveners herein the amount of $30,027.68 wrongfully collected as default interest.

We issued the writ of certiorari on petition of the Treasurer in order to determine whether the lower court committed an error of law in overruling his plea of res judicata.

As we said in *Meléndez* v. *Cividanes*, 63 P.R.R. 4, 11, "The plea of *res judicata* arises from the necessity of putting an end to litigation. Hence, in order to invoke that doctrine successfully, a substantial identity between the subject matters, the causes of action, the parties and the capacity in which they acted, as well as the fact that the former adjudication was on the merits, must be established."

We must examine, therefore, the scope of the action in which the former judgment was rendered, invoked as defense in this case, in order to determine if the doctrine of res judicata is applicable. The Treasurer maintains that it is the same claim, and that by failing to wholly include it in their first suit, complainants have split their cause of action. Let us see.

In a long series of decisions this Court has studied the rule of res judicata, applying it at times, rejecting it at others.[1] But for the first time it is raised in tax suits.

It has been definitively established by the federal state courts that the plea of res judicata may be invoked in said

---

[1] See among others: *Miller* v. *Cía. Ron Carioca Destilería, Inc.*, 71 P.R.R. 632; *Ex parte Soto*, 71 P.R.R. 511; *People* v. *Ibarra*, 69 P.R.R. 523; *Vidal* v. *Monagas*, 66 P.R.R. 588; *Avellanet* v. *Porto Rican Express Co.*, 64 P.R.R. 660; *People* v. *Lugo*, 64 P.R.R. 529; *Meléndez* v. *Cividanes*, 63 P.R.R. 4; *Laloma* v. *Fernández*, 61 P.R.R. 550 *Cintrón* v. *Yabucoa Sugar Co.*, 54 P.R.R. 493; *Manrique et al.*, v. *Agrayo*, 37 P.R.R. 314.

kind of suits.[2] As a whole, however, the tendency of those courts has been one of marked restriction in the application of said doctrine in said cases.[3] Keeping this in mind, let us determine whether, under our tax legislation, the court erred in holding that the plea of res judicata did not lie in the case at bar.

It is evident that if the valid assessment of the inheritance tax was notified to the taxpayers on February 5, 1946, and payment of the part with which they agreed was made on the 28th day of the same month and year, they were not liable for any default interest, in accordance with § 9 of Act No. 99 of August 29, 1925 as amended by Act No. 20 of November 21, 1941 which provides that "Such taxes [inheritance tax] shall become due and payable within the term of ninety (90) days immediately following the date on which the Treasurer notifies the interested persons of the taxes corresponding to the inheritance" and that "If said taxes are not paid within the aforesaid term of ninety (90) days, interest thereon shall be charged and collected at the rate of six (6) per cent per annum."

As § 7 of Act No. 99 already cited, required that any

---

[2] With regard to the application of the plea of res judicata to tax cases see Mertens, Law of Federal Income Taxation, Vol. 10 A, Chapter 60; Griswold, Res Judicata in Federal Tax Cases (1937), 46 Yale L. J. 1320 and Annotations in 92 L. Ed. 912, 130 A.L.R. 374, 140 A.L.R. 797, 150 A.L.R. 5, 162 A.L.R. 1204.

And regarding its application in inheritance tax cases see *Guettel* v. *United States*, 95 F. 2d 229, 118 A.L.R. 1060 (1938); *Van Dyke* v. *Kuhl*, 171 F. 2d 187 (C. A. 7, 1948); *Cleveland* v. *Higgins*, 50 F. Supp. 188 (1943), 148 F. 2d 722 (C. A. 2, 1945); *Martin* v. *Broderick*, 81 F. Supp. 693 (1949), 177 F. 2d 886 (C. A. 10, 1949); *Magruder* v. *Safe Deposit & Trust Co.*, 159 F. 2d 913 (C. A. 4, 1947), 65 F. Supp. 783 (1946); *Moir* v. *United States*, 57 F. Supp. 529 (1949), 149 F. 2d 455 (C. A. 1, 1945).

[3] *Commissioner* v. *Sunnen*, 333 U. S. 591, 92 L. Ed. 896 (1948): *M. M. Argo*, 3 T. C. 1120, *Argo* v. *Commissioner of Internal Revenue*, 150 F. 2d 67, certiorari denied in 326 U. S. 762 (1945); Henry S. Sellen, The Sunnen Case, 4 Tax L. R. 363; *Cambridge Loan & Building Co.* v. *United States*, 57 F. 2d 936 (1932).

See in particular Judge Magruder's statement to that effect in *Pelham Ball Co.* v. *Hassett*, 147 F. 2d 63, 67 (C. A. 1, 1945).

person who wishes to appeal to the Tax Court in order to attack the assessment of the inheritance tax, should pay the part of the tax with which he agrees, the taxpayers paid the tax itself as well as that portion of the interest which they considered that they were bound to pay, notifying the Treasurer of their disagreement with the imposition of interest at the rate of 1 per cent monthly, from November 21, 1941 until full payment, because they believed that they were only bound to pay interest at the rate of 6 per cent per annum from said date on.

On March 5, 1946, after making the payment hereinabove mentioned, the heirs filed the action attacking the rate of 1 per cent monthly at which the Treasurer computed the interest from November 21, 1941. It should be noted that, although the complaint in said case attacked the rate of interest applied by the Treasurer when he computed the interest for the period in question — as the taxpayers considered that they should have the benefit of the reduction from the 1 per cent monthly to the 6 per cent annually provided by Act No. 20 already mentioned — and that it was on that question that the controversy mainly centered in the Tax Court, the latter, in granting the complaint, did so on the grounds already mentioned, that is, not because the complainants in said action were bound to pay only the 6 per cent as rate of interest from November 21, 1941 on, but on the ground that they were not bound to pay any default interest, because the tax was paid within the 90–day term since the Treasurer notified to them the valid assessment on February 5, 1946.

■ ■ Although the Tax Court made a correct interpretation of the Act in stating its grounds of decision, it decided nothing regarding the possible right of refund of the interest unduly paid by complainants, and it expressly so stated. It is natural that the court should so act for under our tax laws, it could not, even under the authority of the Rules of

Civil Procedure applicable to the proceedings had before it, grant such refund—something which it could otherwise have done, since it was compatible with the uncontroverted facts and the law — as under the circumstances of the case and the special nature of the action, it lacked jurisdiction within said action to order the refund of the interest unduly paid. This is so, because the Act in force during the prosecution of the first suit authorizing the refund of the amounts wrongfully collected as taxes, provided that the taxpayer should claim in writing from the Treasurer of Puerto Rico, the refund within the four years after payment, while Act No. 169 of May 15, 1943, which amended Act No. 172 of May 13, 1941 creating the Tax Court of Puerto Rico, provided that the jurisdiction of the Court can not be invoked until the Treasurer has rendered his administrative decision on the matter in controversy. The former was not done by the taxpayers until after our decision in *Buscaglia, Treas.* v. *Tax Court, supra,* in which it was definitively held that the applicable statute under the circumstances of the case, was Act No. 20 of November 21, 1941, and therefore there was no administrative decision of the Treasurer on the question of the heirs' right to a refund while the first complaint was being disposed of.

The original suit claiming the interest collected by the Treasurer in excess of 6 per cent for the period from November 21, 1941 on, was filed within the limited scope of the remedy granted by Act No. 99 after paying — wrongfully — the interest with which the taxpayers agreed. The latter had four years after payment to claim the refund, and they did so in time.

The Treasurer concedes that the right to the refund was not litigated in the first suit. But he avers that it might have been litigated and that, therefore, the plea of res judicata operates as an estoppel to litigate the questions separately in the present action. We reject on the above grounds said

contention. The right to refund could not have been litigated, as it was not litigated, in the first suit. Once the taxpayers paid that part of the interest with which they agreed, the Tax Court could not grant the reimbursement unless the legal jurisdictional requirements were present. As we have seen, they were not present in the first suit — which was not for refund but to attack the assessment of the inheritance tax regarding part of its interest — and the Tax Court lacked, therefore, jurisdiction to grant the adequate remedy in an action for refund. Consequently, the claim of the taxpayers for the interest unduly paid, the object of this action, was not recoverable in the first suit, and for that reason we cannot agree with the Treasurer that the rule of split cause of action was violated. We believe that what we said in *Avellanet* v. *Porto Rican Express Co.*, 64 P.R.R. 660, 675 on said doctrine, applies to the case at bar:

"That rule 'is applicable only where the law has placed no impediment in the way of his obtaining, in the action he has brought, the full measure of relief to which he is entitled,' *Taub* v. *McClelland-Cold Commission Co.*, 51 P. 168 (Colo.), quoted with approval in *Taylor* v. *Continental Supply Co.*, 16 F. (2d) 578, 581 (C.C.A. 8, 1926). 'The rule as to splitting causes applies only to claims "then capable of recovery" in the first action.' *United States* v. *Pan-American Petroleum Co.*, 55 F. (2d) 753, 782 (C.C.A. 9, 1932), Cf. *U. S.* v. *Calif & Oregon Land Co.*, 192 U. S. 355; *Baltimore S. S. Co.* v. *Phillips*, 274 U. S. 316. See 1 Moore, *supra*, § 204, p. 147, footnote 19."

Since the rule of res judicata is not applicable to the case at bar, the lower court did not err in so holding and in granting the complaint.

The decision of the Tax Court will be affirmed.

Mr. Justice Snyder did not participate herein.