*In re* RASEMAN ESTATE

DEPARTMENT OF TREASURY *v.* RASEMAN

1. MENTAL HEALTH — CONSTITUTIONAL LAW — HOSPITALS — INSANE PERSONS.

> The reimbursement provision of the hospital act for mentally diseased persons which stated that the patient, husband, wife, father, mother, grandfather, grandmother, and children of any age, being of sufficient ability, shall be jointly and severally liable for the care and maintenance of any patient at an institution for the mentally ill *held,* not to violate the provision of the 1908 Constitution which reads: "Institutions for the benefit of those inhabitants who are deaf, dumb, blind, feeble-minded or insane shall always be fostered and supported" (Const 1908, art 11, § 15; PA 1963, No 52).

2. MENTAL HEALTH — CONSTITUTIONAL LAW — HOSPITALS — INSANE PERSONS.

> The institutions for insane persons provision of the 1908 Constitution did not mandate the legislature to provide for the cost of maintaining institutionalized patients at the *sole* expense of the state in addition to fostering and supporting such institutions (Const 1908, art 11, § 15).

3. MENTAL HEALTH—CONSTITUTIONAL LAW—EQUAL PROTECTION—· HOSPITALS—INSANE PERSONS.

> The reimbursement provision of the hospital act for mentally diseased persons which stated that the patient, husband, wife, father, mother, grandfather, grandmother, and chil-

---

REFERENCES FOR POINTS IN HEADNOTES

[1–4, 7] 41 Am Jur 2d, Incompetent Persons § 55 *et seq.*
   Constitutionality of statement imposing liability upon estate or relatives of insane person for his support in asylum.   20 ALR 3d 363.
[5, 6] 16 Am Jur 2d, Constitutional Law §§ 495, 496.
[8–10] 30A Am Jur, Judgments § 324 *et seq.*
[11] 5 Am Jur 2d, Appeal and Error § 1009 *et seq.*

dren of any age, being of sufficient ability, shall be jointly and severally liable for the care and maintenance of any patient at an institution for the mentally ill *held*, not to violate the equal protection of the law provisions of the federal and state constitutions, since the determination of the class to bear the burden of contributing to the support of patients at state mental institutions is founded upon the factors of causation, benefit, and moral duty which are relevant, sufficient and reasonable to satisfy the constitutional requirements (US Const, Am 14, § 1; Const 1908, art 1, § 2 and art 2, § 1; PA 1963, No 52).

4. MENTAL HEALTH—TAXATION—HOSPITALS—INSANE PERSONS.

The fact that a taxpayer has contributed under the general taxing procedures his proportionate share to state institutions for the care of insane persons does not act to relieve him of contribution, in addition to the general tax, amounts required by statute for the care and maintenance of a patient at an institution for the insane, where a special relationship exists between the taxpayer and the patient (CL 1948, § 330.21, as added by PA 1963, No 52).

5. CONSTITUTIONAL LAW—CLASS LEGISLATION.

Classification in application of statutes is primarily for the legislature and is sufficient if it is practical and reasonable; it is not reviewable unless palpably arbitrary.

6. CONSTITUTIONAL LAW—EQUAL PROTECTION—CLASS LEGISLATION.

Equal protection of the laws does not prevent a reasonable classification by legislative enactment and the ultimate decision as to the wisdom of such laws rests with the legislature.

7. MENTAL HEALTH—HOSPITALS—INSANE PERSONS—COST OF CARE—STATUTE—CONSTITUTIONAL LAW.

Statute imposing liability on relatives of an insane person for the cost of that person's care in a state institution to the extent that the relatives are able to pay such cost sets up a proper classification which bears a reasonable relationship to the purpose of the statute (CL 1948, § 330.21 as added by PA 1963, No 52).

8. JUDGMENT—WORDS AND PHRASES—RES JUDICATA—APPLICATION.

The doctrine of *res judicata* reflects a policy of law which seeks to end litigation, but it is only a policy, not an absolute rule, and it need not be and has not been applied rigidly without regard to disparate factual situations.

9. JUDGMENT—WORDS AND PHRASES—RES JUDICATA—APPLICATION.

  Generally, *res judicata* applies only where there has been an adjudication on the merits.

10. MENTAL HEALTH—HOSPITALS—INSANE PERSONS—MAINTENANCE —ARREARAGES.

  Probate Court adjudication on the merits that a person was insane in 1944 and an order that the insane individual's father pay 100% of the cost of maintenance at a state hospital did not constitute an adjudication on the merits of the facts after 1944 and, hence, did not operate in the nature of *res judicata* as to later facts which have never been the subject of adjudication, so as to prevent modification of 1944 order as to accrued and unpaid arrearages.

11. COSTS—CONSTRUCTION OF STATUTE.

  No costs are allowed on appeal from circuit court reversal of probate court order approving a claim against a decedent's estate for the unpaid balance of the cost of maintenance of deceased's insane son at a state hospital, construction of a statute being involved (PA 1963, No 52).

Appeal from Wayne, Carl M. Weideman, J. Submitted Division 1 December 5, 1968, at Detroit. (Docket No. 4,932.) Decided June 25, 1969. Rehearing denied August 7, 1969. Application for leave to appeal filed August 29, 1969.

The State of Michigan presented its claim against the estate of Carl H. Raseman, deceased, for the unpaid balance of the cost of maintaining his son in a State hospital. Richard K. Uhl, administrator, contested. Claim allowed in probate court, and disallowed in circuit court. Plaintiff appeals. Reversed and remanded.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *William D. Dexter, Richard R. Roesch,* and *James B. Saunders,* Assistant Attorneys General, for plaintiff.

*Richard K. Uhl,* for defendant.

Before: Lesinski, C. J., and Holbrook and Levin, JJ.

Holbrook, J. This is an action involving the liability of the estate of Carl H. Raseman to the State of Michigan for the claimed unpaid balance of the cost of the maintenance of Robert D. Raseman, an insane person, committed to the Ypsilanti State Hospital.

The parties have stipulated to the facts presented on appeal: On November 24, 1944, Robert D. Raseman, age 21, was adjudicated insane and committed to the Ypsilanti State Hospital by the Wayne County probate court acting upon a petition presented by Carl H. Raseman, Robert's father. The order of commitment stated that Robert D. Raseman was to be a "full-pay patient" and that "the estate of said patient and Carl H. Raseman, father of said patient, be and are ordered to pay 100% of the cost of maintenance of said Robert D. Raseman." The order of commitment was never modified or revoked by the probate court.

Carl H. Raseman made periodic payments totaling $4,144.17 on the hospital account, paying it in full through October, 1948. On September 11, 1964, the State of Michigan caused a citation to be issued out of the Wayne county probate court, directing Carl H. Raseman to show cause relative to his failure to comply with the court order of 1944. Thereupon Mr. Raseman filed a petition to modify the support order in the probate court in November, 1964. The show-cause citation was not heard due to Mr. Raseman's death on December 10, 1964.

A claim in the amount of $17,540.11 representing the unpaid balance of the cost of the maintenance of Robert D. Raseman while confined to Ypsilanti State Hospital covering a period of commitment

from November 1, 1948, to December 10, 1964, was filed against the estate of Carl H. Raseman by the State of Michigan. The administrator of the estate objected to the claim and it was referred to a referee. On January 11, 1967, the referee issued an opinion and recommendation holding the claim valid. The Wayne county probate court entered an order on February 1, 1967, approving the claim.

Appeal was made by the administrator of the estate to the circuit court of Wayne county. A written opinion was filed by that court on December 6, 1967, holding the reimbursement provision of PA 1923, No 151,[1] unconstitutional. An order of judgment was filed on January 5, 1968, wherein the order of the probate court was overruled and the claim of the State of Michigan filed in the estate of Carl H. Raseman held for naught.

Claim of appeal from the order of judgment of the Wayne county circuit court was filed by the State of Michigan on January 11, 1968. There are only 2 issues properly presented on appeal and they are dealt with in order.

1. *Does the reimbursement provision of PA 1923, No 151, as amended before December 10, 1964, violate art 11, § 15 of the Michigan Constitution of 1908?*

The reimbursement provision in question as applicable in the instant case, PA 1963, No 52 (Stat Ann 1965 Cum Supp § 14.811) provides:

"If the relatives or friends of such mentally diseased person shall so request, or if on investigation at the time of the order for care, custody and treatment or at any time subsequent thereto, it shall appear that such mentally diseased person has means of property sufficient for the payment of his care

---

[1] CL 1948, § 330.21 as amended by PA 1963, No 52.

and maintenance, or if those persons legally liable
under § 2 of chapter 1 of Act No 146 of the Public
Acts of 1925, as amended, being § 401.2 of the Com-
piled Laws of 1948, or of this act for the care and
maintenance of such mentally diseased person, have
sufficient means for that purpose, the court shall
order his admission as a full-pay patient, or partial-
pay patient, to any hospital, home or institution for
the care or treatment of the mentally ill, mentally
handicapped or epileptic in this state, and shall
specify the amount which the estate of such men-
tally diseased person, or those persons personally
liable for the care and maintenance of such mentally
diseased person shall pay for care and maintenance
of such mentally diseased person in such state in-
stitution, and the amount so stated shall be subject
to collection the same as any other moneys due the
state are collected.    The patient, husband, wife,
father, mother, grandfather, grandmother and chil-
dren of any age, being of sufficient ability, shall
jointly and severally be liable for the care and
maintenance of any patient.   No divorce shall op-
erate to relieve the spouse of a patient from this
liability for such care and maintenance, unless the
court shall specifically so order."

The stated issue asks whether the reimbursement
provision violates art 11, § 15 of the Michigan Con-
stitution of 1908, which reads:

"Institutions for the benefit of those inhabitants
who are deaf, dumb, blind, feeble-minded or insane
shall always be fostered and supported."

It is plaintiff's contention that there is no basis
for the view that the named institutions are to be
financed totally by the public through taxation.   It
argues that because there is no mandate requiring
total public financial responsibility for the costs
of the care and maintenance of persons committed

to the named institutions, the reimbursement provision is consistent with the constitutional provision.

Defendant asserts the reimbursement provision to be unconstitutional because it attempts to shift the burden of support from the public to the patient or family relatives.

Two similar constitutional provisions, Ohio[2] and Kansas[3] have been interpreted in the following 2 cases: *The State* v. *Kiesewetter* (1882), 37 Ohio St 546 and *Kaiser* v. *The State of Kansas* (1909), 80 Kan 364 (102 P 454).

In *The State* v. *Kiesewetter, supra,* p 549, it is stated:

"2. It is also claimed that this construction of the statute brings it in conflict with section 1, article 7 of the constitution, which declares that 'institutions for the benefit of the insane, blind, deaf and dumb, shall always be fostered and supported by the state; and be subject to such regulations as may be prescribed by the general assembly.'

"*The answer to this objection is that the provision of the constitution is not self executing,* and that the mode in which such institutions are to be fostered and supported is left to the discretion of the general assembly. That discretion has been exercised in the passage of the statute now under consideration." (Emphasis supplied.)

In *Kaiser* v. *The State of Kansas, supra,* it was noted that the constitutional provision was copied

---

[2] The Ohio Constitution (art 7, § 1) provided:
"Institutions for the benefit of the insane, blind, and deaf and dumb, shall always be fostered and supported by the state; *and be subject to such regulations as may be prescribed by the general assembly.*" (Emphasis supplied.)

[3] The Constitution of Kansas (art 7, § 1) reads:
"Institutions for the benefit of the insane, blind, and deaf and dumb, and such other benevolent institutions as the public good may require, shall be fostered and supported by the state, *subject to such regulations as may be prescribed by law.*" (Emphasis supplied.)

from the Ohio constitution and dealt with the provision in the same manner.

We do not read our constitutional provision as mandating the legislature to provide for the cost of maintaining institutionalized patients at the *sole* expense of the State in addition to fostering and supporting such institutions. Such a result as claimed by defendant could have been obtained by the framers of our constitution had that been their intent. We find the reimbursement provision to be consistent with the constitutional provision.

2. *Does the reimbursement provision of PA 1923, No 151, as amended before December 10, 1964, violate the federal and state constitutions providing for equal protection of the law?*

Am 14, § 1 of the United States Constitution states:

"No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

Art 2, § 1 of the Michigan Constitution of 1908 states:

"All political power is inherent in the people. Government is instituted for their equal benefit, security and protection."

Art 1, § 2, Michigan Constitution 1963 states:

"No person shall be denied the equal protection of the laws; nor shall any person be denied the enjoyment of his civil or political rights or be discriminated against in the exercise thereof because of religion, race, color or national origin. The legislature shall implement this section by appropriate legislation."

Defendant asserts that the reimbursement provision results in double taxation. This claim is more specious than real. State institutions care for many who lack property, and for those whose support no other person is liable. This is a properly allocated burden to all taxpayers under the general tax whereby State institutions are supported. The fact that a taxpayer has contributed under the general taxing procedures his proportionate share does not act to relieve him of contributing amounts required by a special relationship. Also, the amounts required appear to be different in their character— while general taxes are traceable to the support and maintenance of the institution, the amounts required of those of a special relationship under the reimbursement provision, are directly attributable to services provided to a particular patient of the State institution. There is no class legislation here resulting in unconstitutional taxation. See 48 ALR 733, Annotation, "Constitutionality of statute imposing liability upon estate or relatives of insane person for his support in asylum", cases therein cited and supplemental cases.

The Wayne county circuit court in reversing the order of the probate court relied on the case of *Department of Mental Hygiene* v. *Kirchner* (1964), 60 Cal 2d 716, (36 Cal Rptr 488, 388 P2d 720). Therein the State of California brought an action to recover the costs of care, support and maintenance from the estate of a daughter whose mother was committed as a mentally ill person in a state hospital. The Welfare and Institutions Code, § 6650 of California provided that the spouse, parents or children of a mentally ill person or inebriate shall be liable for his care, support and maintenance in a state institution of which he is an inmate. The daughter's estate against which the state was pro-

ceeding contended that the support statute in question violated constitutional equal protection of the law. The California Supreme Court held:

"Recently, in *Department of Mental Hygiene* v. *Hawley* (1963), 59 Cal 2d 247 (28 Cal Rptr 718, 379 P2d 22), the department, relying upon this same § 6650, attempted to collect from a father for the cost of care, support and maintenance in a state hospital for the mentally ill or insane of his son who had been charged with crime, but before trial of the criminal issue (and obviously without adjudication of that issue) had been found by the court to be insane and committed to such state hospital. We held (pp 255–256[6]) that 'The enactment and administration of laws providing for sequestration and treatment of persons in appropriate state institution—subject of course, to the constitutional guaranties—who would endanger themselves or others if at large is a proper state function; being so, it follows that the expense of providing, operating and maintaining such institutions should (subject to reasonable exceptions *against the inmate or his estate*) be by the state'. (Italics added.) We further held that recovery could not constitutionally be had against the father of the committed patient. This holding is dispositive of the issue before us. Whether the commitment is incidental to an alleged violation of a penal statute, as in *Hawley,* or is essentially a civil commitment as in the instant case, the purposes of confinement and treatment or care in either case encompass the protection of society from the confined person, and his own protection and possible reclamation as a productive member of the body politic. Hence the costs of maintaining the state institution, including provision of adequate care for its inmates, cannot be arbitrarily charged to one class in the society; such assessment violates the equal protection clause."

On appeal to the Supreme Court of the United States (*Department of Mental Hygiene of California* v. *Kirchner* [1965], 380 US 194 [85 S Ct 871, 13 L Ed 2d 753]) the case was remanded for determination as to whether the support statute in question was held unconstitutional by reason of the California equal protection clause or the federal equal protection clause. The California Supreme Court in 62 Cal 2d 586 (43 Cal Rptr 329, 400 P2d 321), found their decision to have been reached solely upon the California equal protection clause.

Plaintiff contends that post-*Kirchner* California district court of appeal cases indicate that § 6650 of the Welfare and Institutions Code of California is not unconstitutional in a broad sense *per se,* but that it is unconstitutional only when the liability sought is imposed and levied on a person who otherwise is not liable for the support of the committed person. On close examination of the several post-*Kirchner* California decisions[4] and the *Kirchner* decision itself, we find merit in this contention of plaintiff. The complete social welfare approach toward those committed to state institutions suggested by defendant's interpretation of *Kirchner,* has not been carried to its obvious conclusion by California post-*Kirchner* cases. In any event, there is no requirement that Michigan accept *Kirchner* since that decision was by admission of the California Supreme Court reached under the laws of California.

---

4 *Bank of America* v. *Department of Mental Hygiene* (1966), 246 Cal App 2d 578 (54 Cal Rptr 899); *In re Shaieb* (1967), 250 Cal App 2d 553 (58 Cal Rptr 631); *County of Alameda* v. *Kaiser* (1965), 238 Cal App 2d 815 (48 Cal Rptr 343); *In re Dudley* (1966), 239 Cal App 2d 401 (48 Cal Rptr 790); *County of Alameda* v. *Espinoza* (1966), 243 Cal App 2d 534 (52 Cal Rptr 480); *Department of Mental Hygiene* v. *O'Connor* (1966), 246 Cal App 2d 24 (54 Cal Rptr 432); *Department of Mental Hygiene* v. *Kolts* (1966), 247 Cal App 2d 154 (55 Cal Rptr 437); *Estate of Preston* (1966), 243 Cal App 2d 803 (52 Cal Rptr 790); *Department of Mental Hygiene* v. *Lucas* (1966), 243 Cal App 2d 464 (52 Cal Rptr 552).

A very comprehensive article concerning the *Kirchner* decision appears in 39 NYUL Rev 858 (1964) entitled "Compulsory contribution to support of state mental patients held deprivation of equal protection." We quote therefrom as follows:

"Public mental health facilities represent one of the largest categories of state expenditures, and the amount devoted to their maintenance and expansion doubles every few years. Statutes in all 50 states and the District of Columbia render one or more private individuals liable for the cost of support and care of inmates of state hospitals. This liability occasionally rests solely on the estate of the patient, but more commonly extends to close relatives, as, for example, in § 6650 of the California Welfare and Institutions Code, which provides that 'the husband, wife, father, mother or children of a mentally ill person * * * shall be liable for his care, support and maintenance in a state institution of which he is an inmate.' In California, collections under this section have totalled over five and one-half million dollars annually—a sum which will be reduced to zero in the future by the effect of the recent decision in *Department of Mental Hygiene* v. *Kirchner.* * * *

"But rather than proceeding to consider the relation of the purpose to the classification—the equal protection question—the court found the purpose invalid: no law could impose private liability for support of mental patients in state institutions. * * *

"If the court's conclusion that only the state as a whole may be charged with the support of inmates is unusual, the argument used to reach that conclusion seems even more so under close examination. The court's contention that civil and criminal commitments are alike in nature and purpose presumes that the main purpose of a civil commitment is to protect the rest of society—a view of psychiatric

medicine which now seems anachronistic. No longer are the mentally ill locked up in houses of bedlam primarily to protect the rest of society from irksome interferences; the 'principal purpose' of hospitalization of the mentally ill, as was recognized long ago by the California court, 'is to care for the indigent insane, who in some cases may be successfully treated   *   *   *   .' The primary beneficiary under modern psychiatric practice is the patient and his family; society benefits only in a far more restricted sense—from the possibility that successful treatment will result in the inmate's return as a productive citizen.   *   *   *

"Thus the validity of the reasoning used by the court to reach the conclusion that support of state inmates is exclusively a state function is seriously in doubt—and so, therefore, is the further conclusion that the legislature lacks power to place liability for such support on any class less than the whole body politic. Yet, while asserting that lack of power, the court also made an exception which creates an apparent inconsistency: the inmate himself, it appears, may be charged for the cost of his care. However in accord with common notions of justice this exception may be, if support of state inmates is not exclusively a state function, if there is to be an exception, then it should be explained why another attempted exception may not also be allowed. This unanswered question is the crux of the true equal protection issue in the case.   *   *   *

"Finally, if particular persons have a common-law or a strong moral duty to act in a way which would accomplish the purpose sought by the legislature, then it may be reasonable to impose a statutory duty identical with their common-law or moral duty. In this instance also, the classifications may justifiably be said to bear a reasonable relation to the legislative purpose."

The Michigan contribution statute creates a class to bear the burden of contributing to the support

of patients at state mental institutions made up of the patient, his spouse, parents, grandparents and children.

" 'The question of classification is primarily for the legislature and is sufficient if it is practical and reasonable. It is not reviewable unless palpably arbitrary. *Straus* v. *Elless Co.* (1929), 245 Mich 558. Equal protection of the laws does not prevent a reasonable classification by legislative enactment and the ultimate decision as to the wisdom of such laws rests with the legislature. *Little* v. *American State Bank of Dearborn* (1933), 263 Mich 645.' " *Tribbett* v. *Village of Marcellus* (1940), 294 Mich 607, 614.

We rule that the classification is a proper one and bears a reasonable relationship to the purpose of the contribution statute. This determination is founded upon three factors—causation, benefit and moral duty which we find to be relevant, sufficient and reasonable to satisfy the constitutional requirement. The Michigan contribution statute is constitutional.

Plaintiff has asserted that the order of the probate court dated November 24, 1944, which was not appealed from is *res judicata* and therefore conclusive on this appeal. The doctrine of *res judicata* is not immutable. It reflects a policy of law which seeks to end litigation, but it is only a policy, not an absolute rule, and it need not be and has not been applied rigidly without regard to disparate factual situations. Just because the 1944 probate court order was not appealed from and the petition for modification was not filed until 1964 does not mean that unpaid arrearages are not subject to modification. Indeed, the fact that a petition for modification can be entertained at all establishes that the doctrine of *res judicata* does not

apply—if the doctrine applied, no court could modify the 1944 order. The reason why it is subject to modification is the reason why it can be modified as to arrearages, because it operates *in futuro* as to facts that had not occurred when the order was entered. It is a general rule that res judicata applies only where there has been an adjudication on the merits. The 1944 probate court adjudication on the merits did not constitute an adjudication on the merits of the 1945 or later facts and, hence, did not operate in the nature of *res judicata* as to later facts which have never been the subject of adjudication so as to prevent modification of the 1944 order as to accrued and unpaid arrearages.

We find further light in 34 CJ, Judgments, § 1313, p 905, where the writer states:

"The estoppel of a judgment extends only to the facts in issue as they existed at the time the judgment was rendered, and does not prevent a reexamination of the same questions between the same parties where in the interval the facts have changed or new facts have occurred which may alter the legal rights or relations of the litigants."[5]

Also, see, 30A Am Jur, Judgments, § 335, p 379; *Lasasso* v. *Lasasso* (1949), 1 NJ 324 (63 A2d 526); *Milbourn* v. *Milbourn* (1963), 86 Idaho 213 (384 P2d 476); *Hurd* v. *Albert* (1931), 214 Cal 15 (3 P2d 545, 76 ALR 1348); *Klaber* v. *Lakenan* (CA 8, 1933), 64 F2d 86 (90 ALR 783); *In re Guardianship of Snowball* (1909), 156 Cal 240 (104 P 444); and *Bennett* v. *Fidelity Union Trust Company* (1938), 123 NJ Eq 198 (196 A 375).

We conclude that the 1944 order of the probate court is not conclusive or *res judicata* as to changed conditions occurring subsequent thereto.

---

[5] See, also, *People* v. *Detroit, Belle Isle & Windsor Ferry Co.* (1915), 187 Mich 177.

Reversed and remanded to the probate court of Wayne county for a hearing on the petition to modify the support order of Carl H. Raseman, now deceased, to determine the legal liability of defendant subsequent to 1944 according to the merits in the case. *In re Linstead Estate* (1954), 340 Mich 653.

Since the liability of the estate can be redetermined on the basis of whether the deceased in his lifetime was of sufficient ability to pay the amounts which the State claims he was required by the probate court order to pay, it is unnecessary to decide whether the "100% of the cost" provision in that order complies with the statutory requirement that the order "specify the amount" which those liable shall pay.

No costs, construction of a statute being involved.

All concurred.