150 Mich. App. 1 (1986)
388 N.W.2d 682
IN THE MATTER OF NICHOLS
DEPARTMENT OF MENTAL HEALTH
v.
NICHOLS
Docket No. 72957.
Michigan Court of Appeals.
Decided March 18, 1986.
Frank J. Kelley, Attorney General, Louis J. Caruso, Solicitor General, and George L. McCargar, Thomas R. Wheeker and Alan Hoffman, Assistants Attorney General, for respondent.
Benjamin W. Wise, for defendant.
Before: WAHLS, P.J., and ALLEN and J.C. RAVITZ,[*] JJ.
PER CURIAM.
Charles Nichols was involuntarily committed to the Kalamazoo Regional Psychiatric Hospital on or about April 1, 1979, as a mentally ill person requiring treatment. Pursuant to a demand by the Reimbursement Office of the Department of Mental Health, Agnes Nichols, Charles's wife and the appellee/cross-appellant herein, produced information concerning assets of the couple. From this information, the office prepared a form, No. DMH 2451 (2/77), titled "Individual and Spouse Financial Liability Determination", and determined that Charles's and Agnes's maximum annual personal liability for Charles's care was *5 $50,578.82. Our review of the form reveals that it was purportedly mailed to Charles on June 4, 1979, and that Agnes preferred not to sign it. The form further bore the note that the determination could be appealed within 30 days.
Agnes appealed the determination and received an administrative hearing on July 24, 1979. The hearing officer considered Charles's separate property and reduced the annual liability to $6,068.54. Still dissatisfied, Agnes appealed to the probate court. During the pendency of that appeal, the Department of Mental Health requested a rehearing before the hearing officer. The rehearing was granted and, on October 9, 1979, the hearing officer reinstated the original determination of financial liability.
Charles Nichols died on December 12, 1979. The actual cost of the care rendered to him by the department totalled $17,357.71. Agnes's appeal to probate court proceeded slowly and culminated in a lengthy and complete opinion, dated January 29, 1982, in which the court reversed the decision of the administrative tribunal and remanded for further proceedings.
The probate court concluded first that the department had failed to completely and correctly prepare the financial liability form, contrary to statute and administrative rules and procedures. The court further held that Agnes was entitled to consideration of her two claims of Charles's duty to support her and of her married woman's separate property rights, that her separate property was protected, and that her and Charles's social security benefits were protected while they were alive. The court also concluded that, although Charles had not appealed the determination of liability, he was entitled to ongoing notice of the proceedings, because collection would be against his assets. *6 Apart from the notice problem, however, the court upheld the continuing jurisdiction of the administrative tribunal pending appeal. Finally, the court declined to address Agnes's equal protection claim or to hold a de novo hearing.
The department appealed to circuit court and Agnes cross-appealed. The circuit court affirmed the reversal and remand ordered by the probate court but gave further analysis on the issue of protected property. The court noted that Agnes's separate property was protected at all times, but her and Charles's social security benefits were protected only while they were still living. The court therefore concluded that Agnes's separate property should not be considered in determining financial liability, while social security benefits should be included in the determination because they could be levied against following the death of the recipient.
The department appeals to this Court by leave granted and raises the one issue of a married woman's separate property rights. The department has initially argued that separate property should be includable in the determination of liability regardless of whether the property can ever be attached, but, in its reply brief, the department argues that the Legislature has made the obligation to pay for services the wife's obligation also. By cross-appeal, Agnes raises several issues, including that of the treatment of her separate property, and we will address the issues seriatim as raised by the cross-appeal.
1. Do the financial liability provisions of the Mental Health Code deny Mrs. Nichols the equal protection of law?
Section 804 of the Mental Health Code, MCL 330.1804; MSA 14.800(804), provides that an individual, *7 the spouse, and the parents are financially liable for services provided to the individual by the department. MCL 330.1800(c); MSA 14.800(800)(c) defines parents as meaning the legal father and mother of an unmarried individual who is less than 18 years of age. Mrs. Nichols does not contest the ability of the Legislature to impose financial liability on the patient or relatives, but she argues that the classification in § 804 is unreasonably underinclusive.
Mrs. Nichols's argument begins with a forerunner to the present § 804, namely the reimbursement provision of 1963 PA 52, which provided:
"The patient, husband, wife, father, mother, grandfather, grandmother and children of any age, being of sufficient ability, shall jointly and severally be liable for the care and maintenance of any patient."
The provision was upheld by this Court against an equal protection challenge in In re Raseman Estate, 18 Mich App 91; 170 NW2d 503 (1969), lv den 385 Mich 780 (1971). Considering three factors  causation, benefit and moral duty  the Court concluded that the Legislature had created a proper class to bear the burden of contributing to the support of patients at state mental institutions. 18 Mich App 103-104. Mrs. Nichols now argues:
"Our Michigan Courts have already held that it is proper to include children, grandparents, and parents of adult children in the class and require them to support the patient. This raises the question of whether the moral obligation of children, grandparents, and parents of adult children is less because they are omitted from the statute than if they had been included in the statute. We think their obligation is the same and the legislature, having previously and properly included all of them as a class, cannot now, without arbitrary discrimination, exclude them from any obligation to *8 contribute. The parents of adult children or the grandparents of the children in many cases, are substantially more able to pay for a patient's support than a spouse or parents of minor children * * *."
We do not think it is necessary to put Mrs. Nichols's assumption about moral obligation to the test as we find it reasonable that the Legislature, in § 804, has narrowed the class to those who clearly receive the greatest benefit from the services provided by the state, being in the usual instance members of the patient's household.
Mrs. Nichols argues that, in any event, she has been denied equal protection of the law because her financial liability is determined in a manner quite different from that of parents. Determination of financial liability is addressed by MCL 330.1818; MSA 14.800(818). Subsections (c) and (d) provide that the ability to pay of a single individual and of a married individual and spouse shall be determined from a consideration of the total financial situation. In contrast, subsection (f) provides that parents' ability to pay is a portion of income subject to tax. Mrs. Nichols feels aggrieved because, if her and her husband's taxable income was the basis for their ability to pay, they would allegedly sustain no financial liability.
We find the different approaches to determining financial liability explainable as follows. By § 806(1), parents are made only secondarily liable for services provided to their children. By § 814, parents' ability to pay is determined on the basis of their total financial situation only if they wilfully refuse to apply for insurance proceeds or other benefits to which their child is entitled. In contrast, a spouse's liability is not secondary but made joint with that of the patient by § 806(2). We do not find this classification by the Legislature to *9 be palpably arbitrary. In re Raseman Estate, supra, p 104.
2. Was Mrs. Nichols entitled to a trial de novo in either the probate court or the circuit court?
Mrs. Nichols complains that she was required to present her case to a hearing officer who had no authority to hear and did not hear any constitutional issues. All that the probate or circuit court would do was review the record, she states.
Section 104(3) of the Administrative Procedures Act (APA), MCL 24.304(3); MSA 3.560(204)(3), provides that review of a final decision or order of an administrative tribunal in a contested case "shall be confined to the record". The probate court in the instant case specifically relied on this statutory provision in refusing to address Mrs. Nichols's equal protection claim. The court stated that the matter should have been raised in the administrative proceeding.
While the APA limits review to the record, it also provides Mrs. Nichols a remedy rendering a de novo court hearing unnecessary. Section 105 of the APA, MCL 24.305; MSA 3.560(205), provides in relevant part:
"If timely application is made to the court for leave to present additional evidence, and it is shown to the satisfaction of the court that an inadequate record was made at the hearing before the agency or that the additional evidence is material, and that there were good reasons for failing to record or present it in the proceeding before the agency, the court shall order the taking of additional evidence before the agency on such conditions as the court deems proper."
Mrs. Nichols fails to show that she attempted to avail herself or was denied her rights under this statutory provision in order to supplement the *10 record. Accordingly, we hold that she was not denied due process by not having a trial de novo on appeal from the administrative tribunal.
3. Was Mrs. Nichols entitled to a jury trial?
MCL 330.1834; MSA 14.800(834) provides that a determination of financial liability may be contested by means of an administrative hearing held pursuant to the APA. A jury is not made a part of such a hearing and § 104(3) of the APA specifically precludes a jury upon judicial review. Mrs. Nichols argues that these statutory provisions are unconstitutional because they deprive her of a constitutionally guaranteed jury trial. Const 1963, art 1, § 14. She asserts that she is guaranteed a jury because the determination of financial liability is part of an action for collection of money by the state.
We are not persuaded to equate an administrative financial liability determination with a subsequent collection action. We have been presented with no authority to the contrary. Certainly, in some instances a collection action may come right on the heels of a liability determination and, of course, the determination is a necessary precedent to the collection action; nevertheless, we recognize them as separate proceedings.
4. Was Mr. Nichols entitled to notice of these proceedings?
The probate court concluded that Mr. Nichols was entitled to notice and that holding has apparently not been disturbed. The objective of Mrs. Nichols's argument, however, is to have the proceedings declared null and void from the beginning. This we will not do.
We note that Mr. Nichols was apparently sent a copy of the initial determination of financial liability with its notice of the availability of an appeal. *11 He did not appeal and there is no evidence that he was notified of any further proceedings. However, we believe that Mrs. Nichols is without standing to raise an objection to such lack of notice on his behalf.
5. Does consideration of Mrs. Nichols's separate property violate her rights under Const 1963, art 10, § 1?
Const 1963, art 10, § 1 provides that the disabilities of coverture as to property are abolished and that the real and personal property of a married woman "shall not be liable for the debts, obligations or engagements of her husband". With the exception of City Finance Co v Kloostra, 47 Mich App 276; 209 NW2d 498 (1973), this Court has consistently interpreted the constitutional provision to mean that all disabilities of coverture have been abolished. Carpenter v Smith, 147 Mich App 560; 383 NW2d 248 (1985), and cases cited therein.
Mrs. Nichols contends that the "Mental Health Code is unconstitutional insofar as it attempts to or authorizes a charge for CHARLES NICHOLS'S care to be paid out of her separate property or uses her separate property as a base for determining her ability to pay". We disagree. Mrs Nichols's argument is based on a misunderstanding of the code.
Section 804 of the code states that an individual and spouse shall be financially liable for services provided to the individual by the Department of Mental Health. The statute thus makes reimbursement for services provided an obligation of the individual and spouse together, treating husband and wife equally. See also MCL 330.1806(2); MSA 14.800(806)(2). As addressed in In re Raseman Estate, supra, and as we discussed above in Issue 1, the classification of obligors for services provided is supported by considerations of causation, *12 benefit and moral duty. We do not perceive § 804 as an imposition of a disability of coverture.
This conclusion leads us to address the analysis of the circuit court so that the implications of our conclusion are clear. The circuit court noted that the predecessor to the Mental Health Code provided for joint and several liability of the various obligors, but that, a year after Kloostra, supra, the Legislature enacted the code and provided for joint liability of individual and spouse. The court concluded that the proper construction of the code, at least in 1979, was that a spouse is only jointly liable, not jointly and severally liable. We disagree.
The code speaks of joint determination of liability in § 806(2) and of joint ability to pay in § 818, but it does not refer to "joint liability". Section 802 establishes "financial liability" and § 804 directs that the individual, the spouse and the parents "shall be financially liable"; this language does not suggest anything short of joint and several liability. We read § 806(2), not as a limit on the liability provided by the earlier sections, but as a method for determining liability. Were we to hold otherwise, there would be no provision in the code providing for liability from the individual's separate estate; yet, it has been an underlying assumption of the parties and the courts below that the individual's separate estate should be considered in the determination of liability and is subject to legal process.
6. May social security benefits and teachers' pensions be considered in determining ability to pay?
Both parties recognize that social security benefits and teachers' pensions are not subject to legal process while the recipient lives but are no longer protected upon death. Mrs. Nichols would interpret *13 this protection so broadly as to prevent any consideration of such benefits in the ability-to-pay determination mandated by § 818 of the Mental Health Code, which provides that "ability to pay shall be determined from a consideration of their total financial situation". However, we conclude that mere consideration of the protected benefits does not constitute subjecting them to legal process. See State Collection Unit v Stewart, 438 A2d 1311 (Md, 1981).
7. May Mrs. Nichols alone be sued on a joint obligation of herself and her husband?
In raising this issue, Mrs. Nichols assumes that she and her husband are joint obligors of a particular contract. In light of our holding on Issue 5 above that the code imposes joint and several liability, Mrs. Nichols's argument on this issue lacks merit.
Mrs. Nichols's final issue relates to attorney fees and assumes that she prevails. We need not address this issue because she has not prevailed.
The order of the circuit court remanding to the agency for a new financial liability determination is affirmed with the modification that the agency may consider Mrs. Nichols's separate property. No costs.
NOTES
[*] Circuit judge, sitting on the Court of Appeals by assignment.